THE SOUTHERN LIFE INSURANCE COMPANY, plaintiff in error, *vs.* EDWARD T. KEMPTON, administrator, defendant in error.

(BLECKLEY, Judge, having been of counsel, did not preside in this case.)

1. An application for a policy of life insurance was made November 13th, 1871; at the time of the application the premium was tendered to the agent of the company at whose solicitation the application was made; the agent declined to receive it, stating that it would do when the policy was delivered, and that the applicant, if his application was granted, would be insured anyhow. On the 15th of November, 1871, the policy was issued; on the 9th of December, 1871, a letter was received from the agent by the applicant, stating that he was insured—that he, the agent, had his policy, and would be down the following week with the policy according to the arrangement; on the 15th December, 1871, the agent was at the town of the residence of the applicant with the policy; the applicant was sick, but an agent of his tendered the premium to the agent of the company, who declined to receive it and to deliver the policy unless the attending physician would certify that the applicant was in no immediate danger, the certificate was given, handed to the agent, and the money again tendered and the policy demanded, which was again refused; the applicant died on the 17th December, 1871.

*Held*, that on a bill filed for the recovery of the amount of the policy, equity will consider that done which ought to have been done. That under the circumstances it was the duty of the agent of the insurance company, who had received the policy from the company as the agent also of the applicant, and who had himself waived the payment of the premium when the application was made to him and had assured him that he would be insured any how, and had agreed to make the application for him, and had written to him that the policy was issued and ready for him, and he would deliver it the next week, to comply with his promise and to deliver it on payment of the premium by the applicant or his agent; and that it would be inequitable for the insurance company to refuse to pay the amount of the policy under these circumstances.

2. The issuing the policy on the 15th of November, 1871, and its delivery to the agent of the company, who was also then acting as the agent of the applicant, was a delivery to the applicant, and bound the applicant for the payment of the premiums, and the company on the policy from the date of such delivery to the agent.

3. The court did not err on the facts herein-before stated in declining to charge: " That after the deceased had become seriously ill, it was too late for him to bind the defendant by a tender of the premium, and the defendant was not bound to issue the policy after such a change in the health of the applicant;" nor was it error in the court to charge " that if the de-

ceased made an application for insurance in regular form, and the same was accepted by the defendant, and a policy of insurance was issued and placed in the hands of an agent for delivery to the insured upon payment of the premium, and said premium was paid or tendered by the insured, or any agent for him, the defendant is bound for the amount of the policy, with interest from the time specified in said policy of insurance."

4. In such a case as this, the principle that any change in the health of the applicant between the time of the application and of the issuing the policy, would relieve the insurance company from consummating the contract, does not apply; the delivery to the agent, under the facts, was a consummation of the policy, and that, with the other facts proven, show a consummation of the contract under sections 2794 and 2821 of the Code.

Equity. Insurance. Contracts. Principal and agent. Delivery. Before Judge GIBSON. Richmond Superior Court. October Term, 1875.

Reported in the opinion.

W. H. HULL, for plaintiff in error.

HOOK & WEBB, for defendant.

JACKSON, Judge.

This was a bill in equity, brought by defendant in error against the plaintiff in error, to recover a sum due on a policy of insurance on the life of his intestate, Robert W. Scales, who died December 17th, 1871. Application had been made by Scales for a policy, which application was approved by the directors, and a policy filled up and signed, but was never delivered. The policy and the application were in evidence—produced, under notice, by the defendant. The application was dated November 13th, 1871, and was in usual form. It contained the following clause: " It is hereby declared * * that the policy of assurance hereby applied for, shall not be binding on the company until the amount of the first premium, as stated therein, shall be received in cash by said company, or some authorized agent thereof, during the lifetime of the person therein assured." On the back of the application was written:

The Southern Life Insurance Company *vs.* Kempton.

" First quarterly cash premium, . . . . . . . . . . . . . $39 69

Interest on deferred payments, 7 per cent., . . . . . . . .   4 17

Policy fee and stamp, . . . . . . . . . . . . . . . .   1 50

First quarterly cash payment, . . . . . . . . . . . . . $45 34."

The policy bore date November 15th, 1871. It contained the following clauses: " Nor shall this policy take effect, or be in force, until the first premium is actually paid; and no agent of this company has power or authority to deliver this policy until such premium is actually paid." " Agents of this company are not authorized to make, change, or release any contract of the company, or waive any forfeiture incurred under this policy."

The complainant's proof showed that Scales lived in Waynesboro; that McNair, an agent of the defendant, was there soliciting applications; he took Scales' application, among others; Scales offered to pay the first premium then, but the agent said he could not receive it until the application was approved; he said it could be paid when the policy was delivered to Scales, that it made no difference, if his application was granted he would be insured anyhow.

E. F. Lawson testified, that on December 15, 1871, McNair being in Waynesboro, with the policy, witness told him if he would go with him to the ordinary's office, he (witness) would pay him the premium on Scales' policy; McNair said he would not receive it on account of Scales' condition, but said he would if the physician would certify that there was no immediate danger, but when the certificate was got and shown him he still refused; he also said he would deliver it, but was afraid the company would discharge him. Lawson stated that Scales was taken ill on the 9th or 10th, and was confined to his bed from that time till his death; his illness was serious; the disease was pneumonia. The physician's certificate referred to was read, dated December 13th, 1871, to the effect that "he is in no immediate danger." Mrs. Scales, widow of the deceased, testified that on Saturday, December 9th, her husband received a letter from McNair (which is lost) stating

that his application was accepted, and he would be down the following week with the policy, according to agreement. Her husband died of pneumonia; they had no apprehension of death until about two days before he died.

On this testimony, the court was requested by defendant's counsel to charge the jury, "that after the deceased had become seriously ill it was too late for him to bind the defendant by a tender of the premium, and the defendant was not bound to issue the policy after such a change in the health of the applicant," which the court refused, and charged "that if the deceased made an application for insurance in regular form, and the same was accepted by defendant, and a policy of insurance was issued and placed in the hands of an agent for delivery to the insured upon payment of the premium, and said premium was paid or tendered by the insured, or any agent for him, the defendant is bound for the amount of the policy, with interest from the time specified in said policy of insurance."

The jury found for plaintiff, and defendant excepts to the charge of the court, and this is the error assigned.

We do not see any error in the charge of the court under the light of the facts here proved. McNair solicited the application of Scales; declined to take the premium when he had succeeded in getting Scales to apply; stated to him that the payment made no difference, if his application was received and granted he would be insured any how; took charge of the application for him; got the policy issued; wrote to him before he got sick that he had it for him, and would bring it down the next week, and yet, when he did bring it down, refused to deliver it on tender of the money, agreeing to do it once, if a certain certificate was given him by the physician, but when that was done again refusing the money, and declining to deliver the policy to the agent of Scales. We think that these facts show a case where a court of chancery must intervene to prevent a fraud on the family of the deceased. The conduct of the agent appears to us wholly inexcusable, and we think that the company is bound by it in

this case, under these facts.  We think also that McNair, under the facts, became the agent of Scales to receive the policy for him; that he did receive it for him, and its delivery to McNair was a delivery to Scales.  Besides, our Code declares delivery not essential in case other facts show a consummation of the contract: Code, sections 2794, 2821.  Equity will consider that done which ought to have been done, and in this case the agent of the company, who was also the trusted agent of Scales, ought to have taken the money tendered and to have delivered the policy he held for Scales.  It was issued before Scales was taken sick, long before; it was in the hands of McNair for Scales before the latter was taken sick, as the date of McNair's letter shows, and it would be inequitable and grossly wrong to allow McNair to perpetrate for the insurance company such a fraud as this.

We recognize fully the doctrine laid down in Bliss on Life Insurance, 240 to 257; and in Whitley *vs.* Piedmont & Arlington Life Insurance Company, 4 Bigelow, 362–3, that a change in health after the application and before the policy issues and is consummated, will relieve the company from its consummation; that good faith requires the insured to make known any change in health; but the facts here show no bad faith but the utmost good faith on the part of Scales.  Besides, the facts here show an actual consummation of the contract, and such circumstances as would outrage equity if it was not consummated.  It is true that the policy says that the first cash premium must be paid before it takes effect; but the facts here show a waiver of such payment, and an assurance to Scales that he would be insured from the date of the policy "*any how,*" and we hold that this is such a case as demanded the reception of the money and the entire completion of the contract according to equity and good conscience.  It would be unjust, we think, to the dead, and to the family he left, not so to hold; and we are gratified that we are enabled by the law and the principles of equity so to hold without doing violence to either.  In every view we can take of the law, and the facts disclosed in this record, we think that the insurance company should

pay this money, and we affirm the judgment, and lay down as the legal principles which control the case the views expressed in the head-notes to this opinion.

Judgment affirmed.