Burks, J.
This is an appeal from a decrée of the chancery court of the city of Richmond, dismissing the bill of the complainant, James P. Wooddy, who is the appellant here.
The bill states, in substance, that on the 16th day of April, 1875, the defendant contracted with the complainant to insure his building in the town of Tappahannock, in Essex county, Virginia, against loss or damage by fire, to the amount of one thousand dollars, the risk to commence on the said 16th day of April, and continue one year; that the consideration for the insurance was a premium of twelve dollars and fifty cents, which was paid; that in consideration of the sum so paid, the defendant agreed to issue to him, on the said sixteenth day of April, a policy such as was usually issued to persons insured by the defendant; that the defendant neglected and refused to issue said policy on that day and has ever since declined and refused so to do, although the premium has been paid as aforesaid; that on the following day (the 17th of April) the building was destroyed by fire, and the complainant’s loss exceeds the amount of the insurance; that the complainant has complied with all *364 tlie terms and conditions of his contract, and has done everything necessary to entitle him to recover the amount assured, and yet that the defendant has refused and still refuses either to issue and deliver to kim ^1G S£dd P°dcy or to pay the amount assured; aiU^ PraIer °^' kill is for a specific performance the contract of insurance; that the defendant may he decreed to issue and deliver a proper policy to the complainant, and for general relief.
There was a demurrer to the bill, which the chancellor very properly overruled. The statements of the bill, if proved, make a case for equitable relief. Tayloe v. Merchants Fire Ins. Co., 9 How. U. S. R. 390; Com. Mut. Marine Ins. Co. v. Union Mut. Ins. Co , 19 How. U. S. R. 318; Post v. Ætna Ins. Co., 43 Barb. R. 351; Angell on Fire and Life Ins., § 34; Wood on Fire Insurance, § 12 (p. 32), and authorities cited in notes.
In the case cited supra, from 9 Howard, the contract of insurance was completed in all respects, except the issuing and delivery of the policy. The loss occurred, and then the insurance company refused to proceed further with the contract. The bill was filed substantially for the specific performance of the contract, but the prayer was for a decree for loss and for general relief.
The law is correctly expounded, I think, in the opinion of the court delivered by Mr. Justice Nelson, who, in answer to the objection that the plaintiff had an adequate remedy at law, proceeds to say that “ had the suit been instituted before the loss occurred, the appropriate, if not the only remedy, would have been, in that court (a court of equity), to enforce specific performance, and compel the company to issue the policy. And the remedí' is as appropriate after as before the loss, if not as essential, in order to facili *365 tate tlie proceedings at law, but the proceedings would have been more complicated and embarrassing than upon the policy. The party, therefore, had a - right to resort to a court of equity to compel the delivery of the policy, either before or after the happening of the loss; and being properly in that court after the loss happened, it is according to the established course of proceeding, in order to avoid delay and expense to the parties, to proceed and give such final relief as the circumstances of the case demand. ****** As the only real question in the case is the one which a court of equity must necessarily have to decide, in the exei'cise of its peculiar jurisdiction in enforcing a specific execution of the agreement, it would be an idle technicality for that court to turn the party Over to his remedy at law upon the policy. And, no doubt, it was a strong sense of this injustice that led the court at an early day, to establish the rule, that having properly acquired jurisdiction over the subject for a necessary purpose, it was the duty of the court to proceed and do final and complete justice between the parties, where it could as well be done in that court as in the proceedings at law.”
The result of the decision was that the complainant was entitled to a decree for his loss, and the case was remanded for such further proceedings as might he necessary to carry the opinion of the court into effect.
The answer of the company, as defendant in the court below, puts the burden of proof on the complainant. It denies all the material allegations of the bill—denies that there was any contract of insurance, or payment of premium, as stated in the bill, or that anything has been done by the complainant to entitle him to recover of the defendant the amount of insurance stated in the bill. It admits that the defendant has heard that the complainant *366 professes to have made the contract, under which he seeks to recover, with an agent of the defendant doing business for it at a distant place from its home office, and if such was the case, calls for strict proof of the ter-ms and provisions of the contract, and of such compliance of the complainant therewith as was necessary on his part to entitle him to the relief prayed for in the bill.
The policy which the appellant claims to be entitled to under his alleged contract, and under which he claims indemnity for the loss sustained, contains the following stipulation or condition: “this company shall not be liable, by virtue of this policy or any renewal thereof, till the actual payment of the premium to the compfmy or its authorized agent”; and it is contended by the appellee’s counsel that this condition has never been complied with on the part of the appellant, and he is therefore not entitled to any recovery.
It is proved that William B. Bowzie, who resided at Tappahannock, was the duly constituted agent of the defendant co,mpany to take risks, collect premiums, and issue policies, and was supplied with policies regularly executed by the officers of the company, which he was empowered to fill up and deliver to persons desiring to be insured, without any occasion to communicate with the company before said policies were issued and delivered.
The appellant resided in Fredericksburg, and owned the building in Tappahannock, which was occupied by Bowzie, who was his brother-in-law, under a contract to pay rent. The appellant, who was a seafaring man, came on the 13th day of April to Tappahannock, where his vessel lay, preparatory to a voyage he was about to make to Baltimore. It seems that the building at Tappahannock had been insured' in some company, which had an agency at Fredericksburg, hut the policy had just expired, and, before leaving Frede *367 ricksburg, the appellant had directed his wife to have the policy renewed. On arriving at Tappahannock, ascertaining that Rowzie was the agent of the Old Dominion Insurance Company (the appellee) to effect insurances, the appellant concluded to have the building insured in that company. The value of the building and amount of premium being agreed upon, it was further agreed, at the suggestion of Rowzie, that he should write to appellant’s wife at Fredericksburg and ascertain from her whether she had taken out any policy at that place, as directed by her husband, and if she had not done so, Rowzie, as soon as he was so informed by her, ivas immediately to issue a policy on behalf of the appellee and forward it to appellant’s wife at Fredericksburg. The terms of the contract being mutually assented to, the appellant thereupon tendered to Rowzie twelve dollars and fifty cents, the full amount of the premium, but Rowzie declined to take'it, saying, “I have in my hands money belonging to you for rent, and will credit you by that amount.” There is .no doubt as to the actual tender. Rowzie says “he (Wooddy) pulled out his pocket-book and took out the money to pay me.” Moreover, the company was then indebted to Rowzie, as he says, to the amount of nine dollars, advanced for it by him some time previous. This contract was made, as before stated, on the 13th day of April. The appellant then left with his vessel for Baltimore. Rowzie, pursuant to the agreement, wrote to appellant’s wife, and on the 16th day of April received from her a letter in reply, informing him that she had not effected any insurance in Fredericksburg. As soon as this letter was received by Rowzie it became his duty eo instanti to issue and forward the policy to the appellant’s wife, as he had agreed to do. He did not do so, however, and assigns as a reason for his *368 neglect that he was busy that clay about other matters and did not think it actually necessary to send the policy by that night’s mail. In the early morning of th’e next day (the 17th) the building was entirely destroyed by fire. -Ho policy was ever issued to the appellant by Rowzie or by the company, nor was the premium ever paid by the appellant unless the tender aforesaid, coupled with the agreement between the appellant and the company’s agent (Rowzie), amounted to a payment.
Rowzie, it seems, has never had any settlement of accounts with the company. It was his duty, according to the proofs, to make daily and monthly reports of his transactions as agent to his principal. On the 21st of April he reported the destruction, by the fire of the 17th, of a building in Tappahannock which had been insured by him as agent, and at the same time mentioned that the adjacent building occupied by him was destroyed by the same fire, but he did not state that it had been insured. lie explains this omission by saying that, as the policy had not been issued, he did not know what to do, and thought that Oapt. "Wooddy (the appellant) would confer with the company about it. Being asked, on cross-examination, whether he really considered that he had insured the house, he replied, “ Hot having heard of any similar case before, I did not know whether the property was considered as insured or not.” The further question was put to him, “Isn’t it true that you didn’t consider it insured ? ” Answer. “ I was in doubt.” There is no conflict between the testimony of this witness and that of the appellant, the only two witnesses in the case, as to the contract before stated, and it is obvious that the only “ doubt ” that' Rowzie had ivas as to the legal effect upon the contract of the failure to issue the policy before the loss occurred. If the *369 money tendered had been accepted and actually placed in his hands, and retained by him, the same doubt would probably have been entertained by him because the loss occurred before the policy ivas issued, while, as we have seen from the authorities before cited, in such case equity would have enforced the contract.
Upon the proofs, then, ivas there a payment of the premium within the meaning of the before recited condition, so as to entitle the appellant to the policy before the loss occurred ? Bowzie says that when the twelve dollars and fifty cents, the amount of the premium, were tendered to him, he is clear in his recollection that he at that time owed the appellant that amount for rent past due. If he had then paid over that amount to the appellant in discharge of the rent due, and the appellant had immediately handed it hack to him for the premium, nobody will doubt that the premium would have been actually paid. Did not the transaction, which took place, amount substantially to the same thing? The appellant took the money from his pocket and offered it to Bowzie, who declined to take it, saying in terms, “J have in voj hands money belonging to you for the rent, and will credit you by that amount.” It seems to me that it would be extremely technical to hold that this was not a payment, when, if, instead of retaining the money, which he says he had in his hands belonging to the appellant, he had paid it over to him with one hand and taken it back from him with the other, all will admit that there would have been payment. In the latter case, the money paid would have become at once the money of the company in the hands of its agent, and so, I think, the money retained by the agent under the arrangement made became in like manner the money of the company, the greater part *370 of which, in fact, ($9,) was already in the hands of the company; for, according to Rowzie’s statement, (and it is not contradicted,) the company owed him that amount, balance on account.
In the case of Hallock v. Commercial Insurance Co., 2 Dutcher (N. J.) R. 268, one of the conditions of the policy was the same as in this case—that the insurance should not be binding until payment of the premium. The agent in that case was authorized to make surveys, receive proposals for insurance, and receive premiums ou risks accepted by the company, but was not authorized to make insurances or issue policies. The proposals for insurance were, under the regulations prescribed, sent by him to the company at its home office, and if accepted by it, the policies were to be sent to him for delivery. It will be observed that the powers of this agent were not so large as those of the agent in the present case.
The agent, when applied to by the plaintiff for insurance, made the survey, aud told the plaintiff what the premium would be. The plaintiff thereupon offered him the premium, when he said he would consider it as paid, but would leave it (as he did) with the plaintiff, who was a banker, and with whom he kept his account, until the policy arrived, when he would call and get the money. The application was sent by the agent to the company, the risk was accepted to commence from a previous day, and the policy signed was forwarded by mail to the agent; but it turned out that the building insured was destroyed by fire on the very day the policy was signed, and two hours before it was so signed. The company being ignorant of the fire when the policy was signed countermanded the policy. It was held, that although the agent had not in fact received the premium, the contract was as binding upon the company as if the money had been actually paid over to the agent.
*371 Hie judge, in his opinion, said: “ Would it have made the payment any more real if the plaintiff had handed Breck (the agent) the money and Breck had deposited it with his banker ? The money was, in legal effect, paid to Breck, and by him placed on deposit. It was, in contemplation of law, an actual payment to the company, as much so as if Breck had transmitted the money, as well as the application, to the company.” And he adds: ‘■'but if not an actual payment, the defendants are estopped from saying that it is not. They must be considered as doing what Breck did, viz: saying to the plaintiff, on the 2d March, when he tendered them the money, we icill consider it as 'paid..” And here it may be asked, why does not the doctrine of estoppel apply as fully in the case under review as in the case just .cited ? See, also, New York Central Ins. Co. v. National Protection Ins. Co., 20 Barb. R. 468; Chickering v. Globe Mutual Life Ins. Co., 116 Mass. R. 321; Goit v. The National Protection Ins. Co., 25 Barb. R. 189.
Several cases are cited and relied upon by the learned counsel for the appellee.
In Buffum v. Fayette Mut. Fire Ins. Co., 3 Allen R. 360, cited, the agreement was between the insured and the treasurer of the insurance company, that the latter would see the premium paid, which he did not do, and the loss occurred without payment or tender made. It was held that the company was not bound by this arrangement. While this decision cannot be easily reconciled with the cases before cited in this opinion, it may be remarked of it, that it is, in its circumstances, unlike the case in judgment, in this, at least, that the treasurer had no funds of the insured in his hands, nor was he indebted to him. It is said that the courts of Massachusetts give the greatest effect to the by-laws of a mutual insurance company in restricting the powers of the officers and agents of the company, and that it is *372 doubtful if the decision above cited from 3 Allen- would meet with approbation in most of the states. May on Insurance, § 348. See, also, Wood on Fire Insurance, § 28, p. 69, note.
An examination of the case of Hoffman v. John Huncock Mut. Life Ins. Co., 92 U. S. R. (2 Otto) 161, also cited, will show that the agent, without authority of the company, had agreed with the insured to accept personal property—a horse—in part payment of the premium, and upon the facts as proved it was decided that the transaction was a fraud upon the company.
The case cited from 68 North Car. R. 11, Ferebee v. N. C. Mut. Home Ins. Co., seems to be more directly in point. There, the agent was indebted to the insured, and although there was conflict in the proof as to the alleged agreement that the agent should, in discharge of this indebtedness, pay the premium to the company, yet the court treated the case as if the agreement was proved, and held that it did not bind the company, because never authorized nor ratified by it.
This North Carolina case is the only authority cited by the learned counsel for the appellee which seems to directly support the proposition for which he contends, to-wit: that the agent of an insurance company, having authority to receive premiums, cannot substitute himself for the insured as debtor to the company he represents for the amount of the premium, which, by the terms of the policy, is required to be paid before the policy takes effect. The contrary doctrine, I think, is deduciblefrom cases already cited in this opinion. I shall refer to only two additional cases.
In Bouton v. The American Mut. Life Ins. Co., 25 Conn. R. 542, it was decided that an agreement made in good faith between an insurance agent having authority to receive an insurance premium and the insured, that the agent shall become personally responsible to his principals for *373 the amount of such premium and the insured his personal debtor therefor, constitutes a payment of the premium as between the insured and the insurance company. The same principle was affirmed in Sheldon v. Conn. Mut. Life Ins. Co., 25 Conn. R. 207.
In these Connecticut cases, the policies, as in the case in judgment, contained a stipulation to the effect that they were not to be binding on the company until the amount of the premium, as stated therein, was paid to the company or its accredited agent.
In the last named case, one Horton was the general agent of the company for the purpose of procuring applications, delivering policies and receiving premiums. Ilis powers were not so extensive as in the case now to be decided. It seems he had no authority to issue policies; he could only receive proposals and forward them to his principal for acceptance, and when a proposal was accepted and policy signed by the proper officer of the company, the policy was returned to the agent for delivery. In the present case, the agent was supplied with policies duly executed by the officers of the company, and he had authority, in effect, to make the contract of insurance, fill up the policies, and then deliver them.
There was evidence to prove that Horton, the agent of the defendants, solicited Curtiss (the plaintiff’s intestate) to become insured in their office; that Curtiss declined being then insured and wished delay, because he had not money on hand to pay the premium, as the terms of the policy required; that finally Horton agreed that he would provide for the premium himself, and it should, be considered and held to be paid to the company, and the note for the balance be given afterwards, and that the contract should he held to be good when the proposals were accepted in Hartford, and the policy should he made out at a future *374 time bearing date from that day. “It would seem as ’^s- arrangement,” says Ellsworth, J., delivering the of the court, “ if made out hy the proof to the satisfaction of the jury, ivas material to the plain°ase, and would establish the validity of his claim to a proper policy of insurance. This arrangement is one of daily occurrence, where parties agree for an immediate insurance, but time is given for the payment of the premium and the execution and delivery of the policy of insurance, the thing to be done is agreed to be considered as done, so that the obligation to pay the premium is the payment, and the obligation to make out the policy is virtually the policy itself.”
The appellant’s case is even stronger than these Connecticut cases. In these last the premium was considered and treated as paid, although there was no actual payment, and no means of the applicant in the hands of the agent to be applied to the payment. There was a mere agreement that the agent should provide payment for the applicant. In this case there was an actual tender of payment and an appropriation of the means of the applicant in the agent’s hands to the payment, and about three-fourths of the premium were already in the hands of the company.
Good faith, of course, is essential to the validity of such a transaction, and I see nothing in the record inducing the belief that it was not exercised by the appellant in this case, and I am of opinion that he has complied with the before recited condition of the policy which he contracted for.
The policy contains this further provision : “Any interest in property insured, not absolute, or that is less than a perfect title, or if a building is insured that is on leased ground, the same must be specifically repre *375 sented- to the company and expressed in this policy in writing, otherwise the insurance shall be void.”
It appears that at the time the appellant contracted for the insurance of the building he had the fee simple estate conveyed by deed in which a lien was reserved for the payment of purchase-money, about $800 or $350 of which remained unpaid. It seems that the existence of this lien was not known to the agent, Rowzie, nor was it mentioned by the appellant; and it is contended by the appellee’s counsel that the failure of the appellant to disclose it vitiates the. policy.
The first part of this condition, “ any interest in property insured, not absolute,” has been judicially construed in other cases as referring to the character or quality of the estate. The term “ absolute,” in such a condition, has been held to he synonymous with vested, and used in contradistinction to contingent or conditional. Hough v. City Fire Ins. Co., 29 Conn. R. 10. And so, as it seems to me, the words, “or (interest) less than a perfect title,” in the connection in which they are used, should he construed as referring to the quantity of the interest or estate, which is measured- by its duration. The word “less” is a'term denoting quantity; an estate or interest “less than a perfect title” may therefore mean one that is limited in its extent and duration—as an estate for life, for years, or at will—“less” than an estate in fee simple, or than one of unlimited duration. If this he not the true construction, I am still of opinion that under no proper construction can these words he taken to have been intended to guard against mere incumbrances. If such had been the intention, language more appropriate for the purpose would have been employed, as we find in policies where disclosure of incumbrances is required. In such the requirement is generally *376 plainly expressed. The mere failure, therefore, of the appellant to make known the existence of the lien appeared on the face of the deed (the policy requiring such disclosure, and no inquiries being ma-6e,) did not vitiate the insurance, there being no fraudulent intent; and no such intent is to he inferred from the evidence. West Rockingham Mut. Fire Ins. Co. v. Sheets & Co., 26 Gratt. 854.
The fact is, the property is proved to have been worth probably $1,900. The amount of insurance was '$1,000, and the lien, at the outside, for not more than $350. So that the risk was not seriously, if at all, affected by the incumbrance.
The policy further provides that “ in case of loss the assured shall give immediate notice thereof,” &c.
It is insisted by the appellee’s counsel that the notice required was not given.
This provision in a policy requiring “immediate notice,” or, as in some policies, what is equivalent, notice “ forthwith,” must have a reasonable construction. It has always been held, it is said, that due diligence, under all the circumstances, is all that is required. New York Central Ins. Co. v. National Protection Ins. Co., 20 Barb. R. 468, 475.
Under the circumstances of this case, I think due diligence was used and the notice was sufficient.
The building was burned on the 17th of April. At that time the appellant was in Baltimore with his vessel. lie received intelligence of the destruction of hisdiouse by letter from his wife on the 19th of April; and reached home on the 30th of the same month. On that day he took from Bowzie a sworn statement of the contract of insurance and of the loss of the building. On the 5th day of May following, (four days after he reached home,) through his counsel, he gave notice of his loss to the company, sending at the *377 same time the statement aforesaid, sworn to by Rowzie. The agent, Rowzie, was the occupant of the house at the time it was burned.
If the knowledge of the loss by the company’s agent was not notice to the company, it is still a circumstance to be weighed in determining the question of due diligence ; and it is especially to be considered, that no policy had been delivered to the appellant, by which, if delivered, he would have been apprised of the provision requiring immediate notice of the loss. The withholding of the policy was the neglect of the agent, and his neglect ivas the neglect of the company, and it should not be allowed to take advantage of its own fault or negligence to defeat a just recovery.
I am of opinion, for the reasons stated, to reverse the decree of the chancery court and give the appellant a decree for the amount of the insurance with n interest and costs.
Moncure, P., and Christian and Anderson, J’s, concurred in the opinion of Burks, ,J.
Staples, J., dissented.
The decree ivas as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous. It is therefore decreed and ordered that the said decree be reversed and annulled, and that the appellee pay to the appellant his costs by him expended in the prosecution of his appeal afore *378 said here. And this court now proceeding to render such decree as the said chancery court ought to have rendered, it is further decreed and ordered that the defendant, the- Old Dominion Insurance Company, pay to the complainant, James P. Wooddy, the sum of one thousand dollars with interest thereon to he computed at the rate of six per centum per annum from the 30th day of January, 1876, until payment, and his costs by him about his suit in the said chancery court expended; which is ordered to be certified to the said chancery court of the city of Richmond.
Decree reversed.