. HUTSON *v.* PRUDENTIAL INSURANCE COMPANY.

1. A general agent may bind his principal with respect to all matters within the apparent scope of his employment. But the principal may qualify the authority of a general agent, and will not be bound by the acts of his agent beyond the scope of his authority, where the person dealing with the agent had notice of such limitations.
2. A stipulation in a policy of insurance, that "no condition, provision, or privilege of this policy can be waived or modified in any case, except by endorsement hereon signed by the president, one of the vice-presidents, the secretary, the assistant secretary, or the actuary," and "no agent has power in behalf of the company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise, or making or receiving any representation or information," is notice to the policy-holder and his beneficiary that a general agent is without authority to waive any provision, condition, or forfeiture prescribed in the policy. No person save the designated officers of the company would have such authority.

Argued April 10, — Decided May 12, 1905.

Action on insurance policy. Before Judge Hodges. City court of Macon. September 20, 1904.

Mrs. Effa Wickliffe, in her petition against the Prudential Insurance Company of America, alleged, that on May 1, 1902, the defendant company, in consideration of a quarterly annual payment to it by Moses M. Hutson, her husband, of the sum of $26.79, issued to him its policy of insurance upon his life, she being therein named as the beneficiary; that her husband died November 6, 1902, having during his life complied with all of the conditions of

the contract of insurance, a copy of which was attached to the petition; and that before the time in which to file proofs of death had expired, the defendant company flatly denied its liability on the policy.    The amount of the policy was $3,000, and this amount was alleged to be due petitioner.    The following stipulations were made a part of the contract of insurance declared on: " Grace in payment of premiums.    In the payment of any premium under this policy except the first, a grace of one month will be allowed, during which time the policy will remain in force."    "Revival of Policy.    If this policy be lapsed for non-payment of premium, it will be revived any time within two years after the due date of such premium, as specified on the first page hereof, upon written application and payment of arrears of premiums with interest at the rate of five per cent. per annum, provided evidence of the insurability of the insured satisfactory to the company be furnished.    Application for revival after two years from such date will receive equitable consideration."    " Provisions.    This policy is based upon the payment of premiums annually in advance, but if premiums be made payable in quarterly or semi-annual installments, any future installments of the premium for the current policy year remaining unpaid at the maturity of the policy shall be considered an indebtedness to the company on account of this policy.    Premiums are payable at the home office of the company, but may be paid to an authorized agent of the company on or before the dates when due, in exchange for official receipts signed by the President or Secretary and countersigned by a general agent of the company.    If any premium be not paid when due, this policy shall be void and all premiums forfeited to the company, except as herein provided."    " Modifications, etc.    No condition, provision, or privilege of this policy can be waived or modified in any case except by endorsement hereon signed by the President, one of the Vice-Presidents, the Secretary, the Assistant Secretary, or the Actuary.    No agent has power in behalf of the company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise, or making or receiving any representation or information."    The policy provided for the payment of a quarterly premium of $26.79, due on or before the first day of February, May, August, and November in every

year during the continuance of the policy, payable at the home office of the company in Newark, N. J., or as provided in the stipulation above quoted as to payment to an agent in exchange for the company's receipt.

The defendant company filed an answer in which it admitted the issuance of the policy and the payment of the first quarterly premium, but set up the defense that the policy had lapsed and become void because of the failure of the insured to pay subsequent premiums in the manner prescribed in the policy. On the trial it appeared that the premium falling due on August 1, 1902, was not paid on that date, but on September 11 the plaintiff paid to a Mr. Adams, who held himself out as a general agent of the company, the amount of this premium, taking from him the following receipt: "Sept. 11, 1902. Received of M. M. Hutson twenty-six and seventy-nine/100 in payment of one-half premium due to policy No. 350128 August 1st, which I will forward to Co. and get the Company receipt. [Signed] C. M. Adams, Gen. Agt." On October 25, 1902, the plaintiff procured from the Southern Express Company a money order for $26.79, payable to the defendant insurance company, and forwarded same to its home office at Newark, N. J., to be applied to the payment of the quarterly premium due November 1, 1902. The company, on November 1, in a letter addressed to the plaintiff, acknowledged receipt of this remittance, but declined to accept payment of the premium, because the premium due August 1 had not been paid, the writer of the letter saying: "Before we can accept the premium, this policy must be revived. Kindly have Mr. Hutson sign enclosed revival application on the line marked with blue-pencil cross, have his signature witnessed and the form dated, and then let him take the paper to Dr. W. R. Winchester, who will complete the Medical Examiner's certificate of health at our expense. The doctor will return the application to us. There is an interest charge on this overdue premium of $.22. Will you please see that this amount is sent to us in stamps in the enclosed envelope. Upon its receipt and the revival application from the doctor, the case will receive our prompt attention." It appeared that Adams had retained the money paid to him by the plaintiff on September 11, and had not remitted it to the home office or advised the company of the payment. His explanation

was that he had received the money, calling the plaintiff's attention to the provision in the policy that the forfeiture could not be waived unless there was a revival application accompanied by a certificate that her husband was in good health, which she thereupon promised to furnish before the money was to be forwarded to the home office, but she failed to comply with this undertaking, and for this reason he had never remitted the money to the company. The amount paid to Adams was, after the death of the insured on November 6, returned by check to the plaintiff, and on November 15 the company returned to her the money which she had remitted to pay the November premium. Objection was made to the explanation of Adams as to the terms upon which he received the second quarterly premium, on the ground that he had executed to the plaintiff his receipt and that no parol evidence should be received to impeach, vary, or contradict it in any way. The court overruled this objection. There was evidence tending to show that Adams held himself out as a general agent of the defendant, by signs over his office and by his printed stationery. Upon the conclusion of the plaintiff's evidence she was nonsuited, and the exceptions are to the grant of a nonsuit and to the allowance of the testimony of Adams as to the circumstances under which he received the money with which to pay the second quarterly premium.

*Claud Estes*, for plaintiff.
*Hall & Wimberly* and *J. E. Hall*, for defendant.

EVANS, J. (After stating the facts.) There was evidence tending to establish that Adams was the general agent of the company. Assuming that the evidence was sufficient to establish that he was, did he have authority to waive any of the forfeitures stipulated in the policy ? It is elemental that a general agent may bind his principal with respect to all matters within the apparent scope of his authority. Underlying the doctrine of the liability of a principal for the acts of his agent, whether general or special, is this fundamental principle : the agent can only bind his principal within the scope of his agency. Private instructions or limitations not known to persons dealing with an agent who assumes to act within the apparent scope of his authority can not affect them ; in special agencies for a particular

purpose, persons dealing with the agent must examine his authority. Civil Code, § 3023. A general agency does not necessarily import an unqualified authority to act for and in behalf of his principal in every instance. The agent's authority may be limited, and if the party dealing with him has notice that his powers have been restricted, his principal will not be bound if he exceeds his authority. The defendant company in its contract of insurance expressly limited the powers of all of its agents with respect to certain matters. It was expressly covenanted that no condition, provision, or privilege of the policy could be waived or modified in any case except by endorsement on the policy, signed by its president or other designated officials. The insured was put upon notice that the premiums were to be paid at the company's home office, or to an agent who held the company's receipt signed by one of its governing officers; and the insured bound himself to pay these premiums on certain specified dates or within the period of grace provided for in the policy. When the August premium fell due, it was not paid, nor was it paid or tendered within the thirty days grace thereafter. On September 11, the policy had, under its terms, become lapsed, and the insured and his beneficiary were bound to know this fact. Provision was made in the policy for its being revived within a period of two years, provided past-due premiums were paid, together with interest thereon, and provided further that the insured furnished to the company satisfactory evidence of his insurability. After the policy had become lapsed, neither the insured nor any one acting in his behalf made to the defendant company an application for a revival of the insurance or furnished the defendant with any proof of the insurability of the insured. Plaintiff maintains that the acceptance of the August premium by the general agent without requiring an application for revival or proof that the insured was in good health amounted to a waiver of the stipulations in the policy touching the manner in which it might be revived. This contention is not sound, for the reason that there was an express provision in the policy that no waiver of any forfeiture could be made save by certain designated officials of the company, and that no agent had any power to waive any stipulations upon which the contract of insurance was based. It has been held that where a policy of insurance contains an express stipulation

that no agent has power to waive any condition of the policy, the insured by an acceptance of the policy assents to this stipulation and can not rely upon any agreement made with an agent with regard to a waiver of any of the conditions of the policy. *Thornton* v. *Ins. Co.,* 116 *Ga.* 121. A stipulation in a policy of life-insurance that the premium shall be paid annually before a specified date at the home office of the company or to an agent producing a receipt of the company signed by its president or secretary, and that if not so paid the policy shall become void, and that none of the terms of the policy can be changed or waived except by written agreement signed by its president or secretary, is binding both upon the insured and the beneficiary named in the policy, and a failure to pay the premium as stipulated releases the company from all liability. *Reese* v. *Life Assn.,* 111 *Ga.* 482. Where the policy expressly limits the power of the company's agents, there can be no waiver except in accordance with its provisions. *Lippman* v. *Ins. Co.,* 108 *Ga.* 391. The insured, by accepting the contract of insurance evidenced by the policy, assented to all of its terms, and the plaintiff can not hold the company liable without showing compliance with all of its stipulations and conditions. The payment of the premium at the time and in the manner stated was a condition precedent to the continuance of the life of the policy, and when the insured failed to comply with this condition precedent the contract of insurance became inoperative and could not be revived save in the manner pointed out in the policy. Manifestly this was not done. Therefore the company was not liable, and there was no error in awarding a nonsuit.

We have not dealt with the question as to the admissibility of the testimony of Adams, the general agent, with regard to the circumstances under which he received the money for the August premium, for the reason that had this testimony been excluded the result would inevitably have been the same.

*Judgment affirmed. All the Justices concur, except Candler, J., absent.*