29763.  LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE *v.* JORDAN.

DECIDED FEBRUARY 17, 1943.  ADHERED TO ON REHEARING APRIL 2, 1943.

*William L. Clay,* for plaintiff in error.
*Aaron Kravitch, Anderson Ulmer,* contra.

GARDNER, J. 1. The demurrers general and special, the objections to evidence, the alleged errors of omission and commission regarding the charge of the court, and the assignments of error in the general grounds of the motion for new trial, all crystallize in two issues: (a) Under the pleadings and the facts, was the verdict authorized under the law? · (b) If so, under the pleadings and the evidence was that portion of the verdict for the penalty and attorney's fees warranted as a matter of law?

(a) We should keep in mind that the application was not made a part of the policy. It is also well to note that the application contained no stipulation with reference to the payment of premiums or the kind of receipt to be issued, as was contained in the policy and pleaded as a defense by the insurer. This court said, in *Life & Casualty Insurance Co.* v. *Brockett,* 67 *Ga. App.* 837, 843 (21 S. E. 2d, 510): "It must be kept in mind that it is the law and the policy of this State as to limitations of authority of an insurance agent which are contained in the policy, and where such limitations are contained only in the policy, that the limitations refer to matters which occur subsequently to the issuance and deliv-

ery of the policy. See *Mechanics & Traders Insurance Co.* v. *Mutual &c. Asso.,* 98 *Ga.* 262, 266 (25 S. E. 457), and *Johnson* v. *Ætna Insurance Co.,* 123 *Ga.* 404 [51 S. E. 339, 107 Am. St. R. 92], . . citing the *Mechanics & Traders Co.* case, supra. . . *Interstate Life & Accident Co.* v. *Bess,* 35 *Ga. App.* 723 (134 S. E. 804)." While it is true that the above cases dealt with imputation of knowledge to the insurance company through its soliciting agent, we feel that the same reasoning is with equal force applicable to the situation presented under the facts of this case, at least to the extent of refusing a tender of the first premium, and the kind of receipt required in the policy, and delivering the policy by the soliciting agent. In such event we do not think that the insured, in paying the first premium to the soliciting agent simultaneously with the delivery of the policy, should be held to a strict compliance contained in the policy with reference to the payment of premiums, any more so than an insurance company, by a stipulation in the policy, could relieve itself of knowledge which the agent obtained in the inception of the contract as dealt with in the cases hereinbefore cited. Under the facts of this case, without a stipulation to the contrary in an application, the agent was authorized to deliver the policy while the insured was in good health, and receive the payment of the first premium, without issuing a receipt with all the formalities as prescribed in the policy only. As to subsequent premiums, the rule might be different. Therefore, if in the instant case the agent was authorized to receive the premium and deliver the policy, was he authorized to bind the insurer by a proper tender and refusal of tender of the premium? We think so.

The petition alleged that a tender was made. The answer denied it. The answer contended that the policy was left with the insured for his examination only. The jury resolved the issue in favor of the plaintiff. The court, in its charge, fairly and fully presented this issue. Let us next inquire whether there is any authority of law to sustain the validity of such tender. In *Southern Life Insurance Co.* v. *Kempton,* 56 *Ga.* 339 (3), 343, the Supreme Court said: "The court did not err on the facts hereinbefore stated in declining to charge: 'That after the deceased had become seriously ill, it was too late for him to bind the defendant by a tender of the premium, and the defendant was not bound to issue the policy after such a change in the health of the applicant;' nor was

it error in the court to charge 'that if the deceased made an application for insurance in regular form, and the same was accepted by the defendant, and a policy of insurance was issued and placed in the hands of an agent for delivery to the insured upon payment of the premium, and said premium was paid or tendered by the insured, or any agent for him, the defendant is bound for the amount of the policy, with interest from the time specified in said policy of insurance.' . . It is true that the policy says that the first cash premium must be paid before it takes effect; but the facts here show a waiver of such payment, and an assurance to Scales that he would be insured from the date of the policy 'anyhow,' and we hold that this is such a case as demanded the reception of the money and the entire completion of the contract according to equity and good conscience. It would be unjust, we think, to the dead, and to the family he left, not so to hold; and we are gratified that we are enabled by the law and the principles of equity so to hold without doing violence to either."

In *Mitchiner* v. *Union Central Life Insurance Co.*, 185 *Ga.* 194, 196 (194 S. E. 530), the court held: "Even though, in accordance with the general rule that a proper and continuing tender of the amount of a debt is the equivalent of its payment, a tender of a first premium on a life-insurance policy would ordinarily suffice (Going *v.* Mutual Benefit Life Ins. Co:, 58 S. C. 201, 36 S. E. 556; 37 C. J. 403), yet such a mere tender will not operate as a compliance with an insurance contract, so as to render the policy effective, where, as here, the contract expressly provides that before the insurance shall take effect, the first premium must not only be paid, but be '*accepted* by the company or its authorized agent.' White *v.* Metropolitan Life Ins. Co., 63 Utah, 272 (224 Pac. 1106) ; 37 C. J. 404." Note the phrase, "a tender of a first premium on a life-insurance policy would ordinarily suffice." We have examined the record in the *Mitchiner* case, and find that the application, which was made a part of the policy, provided that the first premium must not only be paid in cash, but accepted by the company or its authorized agent. We cite this case for the proposition that a tender of the first premium to an authorized agent and his refusal to accept it constitute a waiver of the cash payment of the premium. As above stated, there is no application in the instant case with any such provisions as appeared in the *Mitchiner*

case. See the authorities cited by the court in that case as to tender. This question was again dealt with in *McKenzie* v. *Northwestern Mutual Life Insurance Co.*, 26 *Ga. App.* 225 (105 S. E. 720), thus: "Where a policy of life insurance provides that the application therefor is made a part of the policy, and the application contains the stipulation that it is understood and agreed that if the first premium for the insurance applied for is not paid to the agent at the time of making the application, no liability shall exist until a policy shall have been issued and delivered to the applicant *and the first premium thereon actually paid during his lifetime,* and where it appears that the application for the insurance was signed by the applicant while in a state of good health but that the first premium was not paid at that time, and that a policy of insurance was issued by the insurance company and deposited in the mail, for delivery by a local agent *upon the payment of the first premium thereon,* and that this premium was never paid, but a tender thereof was made to a local agent (who had authority to collect the first premium on the policy) when the applicant was upon his deathbed and only five or six hours before he died, and that this tender was refused by the agent, and the policy never delivered, either actually or constructively, to the applicant, no liability upon the policy existed. This is true notwithstanding the absence of any stipulation in the policy, or the application therefor, that the applicant must be in a state of good health at the time of the delivery of the policy and the payment of the first premium thereon." It will be noted that the application was made a part of the policy, which distinguishes it from the case at bar. Nevertheless the court strongly intimated that had the applicant not been in extremis at the time of the tender, the tender would have been equivalent to payment.

Counsel for the insurer cite *Croghan* v. *New York Underwriters' Agency,* 53 *Ga.* 109, *Ramspeck* v. *Pattillo,* 104 *Ga.* 772 (30 S. E. 962, 42 L. R. A. 197, 69 Am. St. R. 197), *Phœnix Insurance Co.* v. *Hamilton & Co.,* 110 *Ga.* 14 (35 S. E. 305), *Murphy Hardware Co.* v. *Rhode Island Insurance Co.,* 153 *Ga.* 273 (111 S. E. 808), and *Reserve Loan Insurance Co.* v. *Phillips,* 156 *Ga.* 372 (119 S. E. 315). All of those decisions dealt with the question of dual agency, and are not applicable to the facts of the case at bar since no such question is here involved. Counsel for the insurer fur-

ther cite *Hutson* v. *Prudential Insurance Co.,* 122 *Ga.* 847 (50 S. E. 1000) ; *Hamilton* v. *Phœnix Insurance Co.,* 111 *Ga.* 875 (36 S. E. 960) ; *Reese* v. *Fidelity Mutual Life Asso.,* 111 *Ga.* 482 (36 S. E. 637) ; *Mutual Reserve Fund Life Asso.* v. *Stephens,* 115 *Ga.* 192 (41 S. E. 679) ; *Stephenson* v. *Empire Life Insurance Co.,* 139 *Ga.* 82 (76 S. E. 592). The *Hutson* decision did not deal with the payment of a first premium. The others were based on the principle announced in *Reese* v. *Fidelity Mutual Life Asso.,* supra. In that case the stipulation was in the application and the policy. *Stephenson* v. *Empire Life Insurance Co.,* supra, which counsel for the insurer very earnestly urges as controlling in his favor, shows, upon an examination of the record in the office of the clerk of the Supreme Court, that the issue so made was based on the stipulation in the application which was made a part of the policy. The facts in these cases distinguish them from the instant case. We find no merit in any assignment of error on the overruling of any of the grounds of the demurrers, or on a failure to charge, or on the charge as given, or on the admission of evidence, or in the general grounds, in so far as the verdict for the face amount of the policy in favor of the beneficiary is concerned.

(b) This brings us to consider whether the judgment for attorney's fees and penalty is sustainable. Under the record, we do not think that such a case was presented as would sustain a verdict for attorney's fees and penalty as prescribed under our law. The test is whether the refusal to pay is frivolous and unfounded. We think the facts presented a situation that is somewhat unusual. The plaintiff contended that the policy was delivered to her without her paying the full amount of the first premium, although she tendered it to the agent. The company contended that the policy was left for examination only. This clearly made a question of fact to be determined by a jury. There was evidence to sustain either contention. We do not think the law ever intended to penalize insurance companies for desiring to have such issues of fact as are contained in this record submitted to a jury for determination. We think that portion of the verdict for the $250 penalty and the $333.33 attorney's fees was without authority of law, under the evidence. If the plaintiff will write off from the judgment the penalty and attorney's fees before or at the time the remittitur is

made the judgment of the court below, the judgment is affirmed; otherwise it is reversed.

*Judgment affirmed on condition. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. The policy sued upon contained the following provisions: "This policy *shall not take effect until the first premium shall have been paid in cash and this contract delivered and accepted* during the lifetime and good health of the insured. All premiums are payable in advance at said home office or to an agent of the company, *upon delivery,* on or before the date due, *of a receipt signed by the president, secretary or treasurer, of the company* and countersigned by said agent. . . *It is expressly agreed that only the president, secretary, or actuary shall have power to alter or change the terms of this contract or waive forfeitures, and that it shall not be within the scope of the authority of any agent, manager, or superintendent other than the said president, secretary, or actuary, to alter or change the terms of this contract or to waive any of the terms thereof."* (Italics mine.)

The evidence is undisputed that the first premium was never paid in cash. However, the plaintiff contends, and there is some evidence to support the contention, that she paid part of the first premium in cash to the soliciting agent before the delivery of the policy to her, and that she tendered the balance of the premium to said agent a few days later when he delivered the policy, but that he declined to accept it then and said he would get it later. And counsel for the plaintiff argue that the tender was equivalent to the payment in cash of the first premium. I can not agree to the contention. The undisputed evidence shows that the agent had no authority to deliver the policy until the entire first premium was paid *in cash* as stipulated by the terms of the policy, and that he had no power to alter or change said terms or to waive them. The undisputed evidence also shows that when he delivered the policy or when he received part payment of the premium the agent did not present to the plaintiff, or to her husband, a receipt signed by the president, or by the secretary, or by the treasurer of the company, and countersigned by him (the agent), as required by the terms of the policy. Furthermore, there was no evidence to authorize a finding that the unauthorized acts of the agent had been ratified by the insurance company. In *Milchiner* v. *Union Central Life Insurance Co.,* 185 *Ga.* 194 (supra), the court said: "Even

though, in accordance with the general rule that a proper and continuing tender of the amount of a debt is the equivalent of its payment, a tender of a first premium on a life-insurance policy would ordinarily suffice (Going *v.* Mutual Benefit Life Ins. Co., 58 S. C. 201, 36 S. E. 556; 37 C. J. 403), yet such a mere tender will not operate as a compliance with an insurance contract, so as to render the policy effective, where, as here, the contract expressly provides that before the insurance shall take effect, the first premium must not only be paid, but be '*accepted* by the company or its authorized agent.' White *v.* Metropolitan Life Ins. Co.; 63 Utah, 272 (224 Pac. 1106); 37 C. J. 404." The contract in that case and the contract in the instant case are substantially similar. The fact that the contract in the *Mitchiner* case was set forth in the application which was attached to the policy, and that the contract in the instant case was set forth in the policy itself, is of course immaterial. Furthermore, under the contract of insurance in this case, no payment of a premium could be made to any agent of the company unless the agent presented a receipt signed by the president, secretary, or treasurer of the company and countersigned by the agent. And the undisputed evidence showed that such a receipt was not presented when the alleged part payment of the first premium was made to the agent, and that the agent was without authority to accept the payment.

In *Hutson* v. *Prudential Insurance Co.,* 122 *Ga.* 847 (supra), the court said: "A stipulation in a policy of life insurance that the premium shall be paid annually before a specific date at the home office of the company or to an agent producing a receipt of the company signed by its president or secretary, and that if not so paid the policy shall become void, and that none of the terms of the policy can be changed or waived except by written agreement signed by its president or secretary, is binding both upon the insured and the beneficiary named in the policy, and a failure to pay the premium as stipulated releases the company from all liability. *Reese* v. *Life Asso.,* 111 *Ga.* 482 (36 S. E. 637). Where the policy expressly limits the power of the company's agents, there can be no waiver except in accordance with its provisions. *Lippman* v. *Ins. Co.,* 108 *Ga.* 391 (33 S. E. 897, 75 Am. St. R. 62). The insured, by accepting the contract of insurance evidenced by the policy, assented to all of its terms, and the plaintiff can not hold

the company liable without showing compliance with all of its stipulations and conditions. The payment of the premium at the time and in the manner stated was a condition precedent to the continuance of the life of the policy, and when the insured failed to comply with this condition precedent the contract of insurance became inoperative and could not be revived save in the manner pointed out in the policy. Manifestly this was not done. Therefore the company was not liable, and there was no error in awarding a nonsuit." To the same effect, see *Mutual Life Insurance Co.* v. *Clancy,* 111 *Ga.* 865 (36 S. E. 944) ; *Mutual Reserve Fund Life Asso.* v. *Stephens,* 115 *Ga.* 192, 193 (41 S. E. 679) ; *Stephenson* v. *Empire Life Ins. Co.,* 139 *Ga.* 82 (76 S. E. 592) ; *McKenzie* v. *Northwestern Mutual Life Insurance Co.,* 26 *Ga. App.* 225 (supra).

In the *McKenzie* case, this court said: "That an insurance company can legally make the delivery of a policy and the *actual* payment of the initial premium, as was done in this case, conditions precedent to the liability of the company admits of no doubt. See *New York Life Ins. Co.* v. *Babcock,* 104 *Ga.* 67 (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134) ; *Hipp* v. *Fidelity Ins. Co.,* 128 *Ga.* 491 (57 S. E. 892, 12 L. R. A. (N. S.) 319) ; *Reese* v. *Fidelity Mutual Life Asso.,* 111 *Ga.* 482 (36 S. E. 637). Obviously, therefore, the insurance company in the instant case was not, under the express stipulation in the application, legally bound until the policies were delivered to the applicant and the first premiums thereon *actually* paid during his lifetime. Counsel for the plaintiff in error contend, however, that a liability on the policies existed because, under the ruling in the *Babcock* case, supra, there was a constructive delivery of the policies when they were deposited in the mail while the applicant was still living, and because the first year's premiums on the policies were tendered the company's agent before the death of the applicant. There are numerous cases in the books dealing with the question as to what constitutes a legal delivery of a life-insurance policy, but suffice it to say that the correct criterion by which this question is to be determined is clearly and succintly stated in the *Babcock* case, supra, to be, not who has the *actual* possession of the policy, but who has the *right* of possession. There was, therefore, no delivery in the case at bar, unless the applicant, before his death, had the right of possession of the policies sued upon, and this right he did not have, under the express pro-

vision of the application, before *actual* payment of the first pre-
miums during his lifetime." And in the same case it was said:
"This ruling is not in conflict with the decision in the *Babcock*
case, supra, cited and relied upon by counsel for the plaintiff. In
that case the controlling facts were, first, that *the premium on the
policy was paid at the time Babcock signed the application for the
insurance,* and, second, that the contract of insurance contained no
express stipulation that the policy should be *actually* delivered to
Babcock during his life. Accordingly the Supreme Court held that
when the policy was deposited in the mail at the home office of the
insurance company (Babcock having already paid the premium and
having nothing else to do before he was entitled to the possession
of the policy), it was for the purpose of being unconditionally de-
livered to Babcock, and consequentially the delivery to the postal
authorities was, in the eyes of the law, a constructive delivery to
Babcock himself. In the instant case, when the policy was de-
posited in the mail, it was not for the purpose of an unconditional
delivery to the applicant, as in the *Babcock* case. The applicant in
this case still had a most important act to do before he was entitled
to the possession of the policy. He had to *actually* pay the first
premium thereon. Therefore in this case the delivery of the policy
to the postal authorities was not a constructive delivery to the ap-
plicant. The *Babcock* case, moreover, distinctly and clearly recog-
nizes that by an express provision in an insurance contract an in-
surer can legally and bindingly stipulate that the first premium on
the policy must be *actually* paid before the contract is consum-
mated." The stipulation in question in the *McKenzie* case was set
forth in the application which was attached to and made part of
the policy and was not contained in any other part of the policy.
Therefore, we stressed the fact that the application was made part
of the policy. In the instant case, however, the stipulation was
set forth in the policy itself and was not contained in the appli-
cation, and therefore the fact that the application was not attached
to the policy is obviously immaterial.

In *Southern Life Insurance Co.* v. *Kempton, 56 Ga.* 339, cited
in behalf of the defendant in error, the facts were different from
those of the case at bar. The court held in the *Kempton* case that
the facts showed a waiver of the provision of the policy stipulating
that the insurance could not take effect until the first premium

was actually paid. In the instant case the facts show no such waiver. Furthermore, in the *Kempton* case the decision seems to be based on the adjudication by the court "that McNair [the agent of the insurer], under the facts, became the agent of Scales [the insured] to receive the policy for him; that he did receive it for him, and its delivery to McNair was a delivery to Scales." That adjudication is at variance with previous and subsequent rulings of the Supreme Court. *In Croghan* v. *N. Y. Underwriters' Agency,* 53 *Ga.* 109 (supra), the court said: "It is not competent for one to employ an insurance agent to effect an insurance or renewal in the agent's own company. He can not take the agency of one wishing to insure, without the consent of his principal. To be agent for both parties to a contract is to undertake inconsistent duties, and such a mutual agency requires the consent of both principals to the mutuality of the agency." The ruling in the *Croghan* case was cited and approved in *Ramspeck* v. *Patlillo,* 104 *Ga.* 772 (supra). Moreover, the policy in the *Kempton* case, supra, contained no stipulation that payment of the first premium could be made to a local agent *only* upon delivery by him of a special form of receipt signed by specified general officers of the insurance company and countersigned by the local agent. The decisions holding that the limitation of authority of an insurance agent, which is contained in the policy only, refers to matters occurring subsequently to the issuance and delivery of the policy, are not applicable to the facts of the instant case, and should not be extended to cover them. Moreover, counsel for the defendant in error do not contend that such cases are applicable here.

It is true that there were some conflicts in the evidence; but, resolving all such conflicts in favor of the plaintiff, a finding for the defendant was still demanded under the evidence and the law applicable thereto. In my opinion the court erred in denying a new trial.

### ON REHEARING.

It is elementary, and applicable to all contracts alike, that a tender of payment is equivalent to payment. The verdict of the jury established as a fact that seventy-six cents of the $2.50 was paid to the soliciting agent at the time the application was obtained and a receipt for the seventy-six cents was delivered to the insured. Thereafter the soliciting agent returned with the policy in accord-

ance with the application and gave it to the wife of the insured. She took the policy and offered the soliciting agent the balance of the premium, which the agent refused, stating that he would call back for the balance of the premium. At this time the insured was at work and in good health. A few days later the insured was accidentally killed. This happened before the agent returned for the balance of the premium. Since tender of payment is equivalent to payment, we must deal with the situation as though the agent received the balance of the premium from the wife at the time he gave her the policy. The insured had performed everything (tender being performance) required of him under the application and the policy, except that it is contended by the company that a stipulation in the policy required that the soliciting agent countersign and deliver to the insured, along with the policy, what was designated as an "official receipt," and that unless the insured received such receipt the policy was void. Neither the insured nor his agent wife knew anything about this stipulation in the policy. Such stipulation was not contained in the application. The soliciting agent was authorized to take the application; to collect the premium in advance, which he did in part; or to collect the premium at the time he delivered the policy. It was the duty of the agent to deliver the receipt stipulated in the policy along with the policy, or at the time he collected the premium. The company clothed him with this authority. Until after the delivery of the policy, during the inception of the contract, his act was the act of the company. His wrong, if it were wrong, to receive the premium and deliver the policy without delivery of the official receipt, was the company's wrong; and the company will not be allowed to take advantage of its own wrong. A stipulation contained only in a policy, as here involved, refers "to matters occurring subsequently to the issuance of the policy." *Interstate Life & Accident Co.* v. *Bess*, 35 *Ga. App.* 723 (134 S. E. 804).

Of course the application is material only to the extent that it shows the insured was not required to demand a particular kind of receipt when the policy was delivered to him (through his wife, who was the beneficiary and undisputed agent of the insured). After he accepted the policy which stipulated the particular kind of "official receipt" to be obtained on payment of a premium, as to subsequent payments the stipulation might be applied. See *Jones*

v. *Gilbert,* 93 *Ga.* 604 (20 S. E. 48), which dealt with both tender and a reasonable time in which applicant should have to determine the provisions of a policy. A study of that case might be helpful.

This court, in *Fort Valley Coca-Cola Bottling Co.* v. *Lumbermen's Mutual Casualty Co.,* 69 *Ga. App.* 120 (24 S. E. 2d, 846), quoted approvingly from Indiana Mutual Casualty Co. v. Pratt, 177 Minn. 36 (224 N. W. 253). "The conventional and frequently elaborate application for insurance may well control as against a subsequently issued policy differing in terms. . . It is a mere offer. So when a policy is tendered, the applicant may perhaps assume in a proper case that his offer has been accepted according to its terms and that the policy conforms to the application." The application in the instant case specifically sets forth the kind of policy, the principal amount to be paid in case of accidental death, the amount of the annual premium, and detailed information concerning the applicant's age, health, etc., regarding him as an insurable risk. It nowhere mentions any particular kind of receipt which the insured should demand and receive before paying his premium and accepting a delivery of his policy. The principle applied in the instant case is not a new-spun one. In other jurisdictions the same principle has been extended further than our appellate courts have gone. Digest treatises which are generally recognized as high authorities have discussed and annotated many decisions on the question. With the thought that it might be helpful, we call attention to these additional authorities on the question before us. See 29 Am. Jur. 358, par. 426; 85 A. L. R. 750, 751: "When an insurance company delivers a policy to an agent to be delivered to the insured, it clothes such agent with apparent authority to receive payment of at least the first premium." And par. 427: "Payment of an insurance premium to an agent who, by the rules of the insurer or a provision in the policy, has authority to collect the premium when in possession of a special or offical receipt only, is invalid where the insured has notice of the limitation upon the agent's authority; but this is a limitation which the insurer may waive or become estopped to set up, and in a number of cases the circumstances have been held to indicate a waiver or estoppel of the insurer. [Manhattan L. Ins. Co. v. Warwick, 20 Grat. (Va.) 614, 3 Am. Rep. 218]. Thus, an insurer which receives and appropriates money intended as the premium on a policy, can

not avoid liability on the policy merely on the ground that the policyholder did not receive an official receipt in the form prescribed by the terms of the policy. [Matthews v. Metropolitan L. Ins. Co., 147 N. C. 339, 61 S. E. 192, 18 L. R. A. (N. S.) 1219; Anno. 85 A. L. R. 754; 18 L. R. A. (N. S.) 1219]. Likewise, if the insurer recognizes the regularity of an application solicited by an unauthorized person, it thereby recognizes such person as its agent; the payment of the first advance premium to him is payment to the company, and estops it from denying such payment to the home office, notwithstanding a provision of the policy that insurance shall not take effect until the first advance quarterly premiums shall have been paid at the home office and a receipt given over the name of the president of the company. [Terry v. Provident Fund Soc., 13 Ind. App. 1, 41 N. E. 18, 55 Am. St. Rep. 217. Anno. 85 A. L. R. 753, 754]."

Carson v. Jersey City Fire Ins. Co., 14 Vroom, 300 (39 Am. R. 584): "Delivery of a policy to an agent authorized to deliver it to the insured and receive the premium, and his delivery of the policy to the insured and acceptance of a note for the premium and procuring a discount of the same for his own account, without paying the premium to the principal, constitutes a valid insurance, in spite of a provision in the policy that such agent shall be deemed the agent of the insured, and that the insurer shall not be liable until he actually receives the premium. [To same effect, Wooddy v. Old Dominion Ins. Co., 31 Grat. 362, 31 Am. Rep. 732]." 85 A. L. R. 753, 754: "The insurance company recognizes the regularity of an application solicited by an unauthorized person, and does thereby recognize such person as its agent; the payment of the first advance premium to him is payment to the company and estops it from denying the necessity of making said payment to the home office, notwithstanding the provision that the insurance shall not take effect until the first advance quarterly premium shall have been paid to the home office and a receipt given over the name of the president of the company."

We make this further comment and citation of authorities as an addition to our original opinion.

*Judgment adhered to. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. For the reasons stated in my dissent

from the original opinion of the majority of the court, I think that the evidence demanded a verdict in favor of the defendant, and that the court erred in denying a new trial.