AMERICAN ASSURANCE ASSOCIATION *v.* HARDIMAN.

124	379
f128	498

Where a certificate of life insurance provided that all benefits thereunder should be forfeited upon failure of the insured to pay the premiums as therein stipulated, and that no agent was authorized to alter or discharge contracts, waive forfeitures, or receive premiums in arrears beyond the time provided in the conditions and provisions of.the policy, the·custom of a mere collecting agent of the insurer with reference to the collection and payment of the premiums, if contrary to the terms of the policy, would not prevent a forfeiture thereof for a failure by the insured to comply with its conditions as to the payment of premiums, where such custom was neither authorized nor ratified by the insurer.

Submitted October 11,—Decided November 20, 1905.

Certiorari. Before Judge Hammond. Richmond superior court. July 29, 1905.

Susie Hardiman sued the American Assurance Association of Atlanta, Georgia, in a justice's court of Richmond county, for fifty dollars, on a life-insurance certificate issued by the association to C. M. Hardiman, in which she was named as the beneficiary. The case was appealed to a jury in the justice's court, and a verdict was rendered therein for the plaintiff for fifty dollars, which, upon review by the judge of the superior court on certiorari, was sustained,

and the association excepted.  On the jury trial it was admitted that the insured died on December 31, 1904; and the plaintiff put in evidence the certificate, which bound the association to pay her fifty dollars upon the death of the insured.  The weekly premium on the certificate was fifteen cents.  The policy contained the following stipulations: "Premiums must be paid on or before Monday of each week to the Association at its office during office hours, or to its authorized representative on demand."  "When premiums for three weeks are due and unpaid, all benefits under this policy cease; but the policy may be restored by the payment, during the third week, of all arrearages and premiums for the next two following weeks, provided that the insured is at that time in good health and has not suffered disease or injury during the arrearage period." "Non-observance of any of the written conditions or requirements of this policy,  .  .  without the written endorsement of approval of the Association through its President or Secretary, voids and immediately terminates the policy, and all payments thereon become forfeited to the Association."  "Agents are not allowed to alter or discharge contracts or waive forfeitures or receive premiums in arrearage beyond the time provided in the conditions and provisions above set forth."  "Receipt of this policy and payment of the premiums thereon is acceptance in full of the policy terms, conditions, and provisions."  T. J. Tudor testified, in behalf of the defendant, that he was its collecting agent in November and December, 1904; that the last premium paid by the insured was paid November 14, 1904, which was on Monday; that the insured failed to pay the premiums due on Monday, November 21, and on Monday, November 28, 1904; that on December 6, 1904, the witness called on the mother of the insured, the plaintiff in the case, who had been accustomed to pay the premiums, and she refused to pay anything more; that during that week Mr. Franklin, her attorney, came to the witness's office and tendered him five dollars which witness refused to accept, because the insured was in arrears and in bad health.  The witness further testified that the insured did not pay his premiums on Monday of each week, but generally paid twice a month, after the city council paid off, and witness received the premiums after they were past due; that the witness on one occasion called after the premiums for two weeks were due, and accepted payment of them.  "Witness's custom was to wait on the in-

sured until after council had paid off, and not call for the premiums on Mondays. Insured did not come to witness's office to pay, but witness always called on him or his mother, at the latter's house, for payment of the premiums." A physician testified, in behalf of the defendant, that he had professionally attended the insured during November, 1904, and prepared a sick-benefit claim (which the evidence shows was presented to the defendant by the insured on the 29th of that month); that the insured was sick in bed on November 28, from tuberculosis, and suffered from that disease until he died.

The error assigned in the petition for certiorari was, that the verdict was contrary to law and the evidence and without evidence to support it.

*M. P. Carroll*, for plaintiff in error.

*Austin Branch* and *A. L. Franklin*, contra.

FISH, C. J. (After stating the facts.) Under the express stipulations of the policy, it was forfeited upon the failure of the insured to pay the three weekly premiums due, respectively, November 21, November 28, and December 5, 1904. The policy could have been restored by the payment, during the third week, of all arrearages and the premiums for the next two following weeks, if the insured had been at that time in good health and had not suffered from disease or injury during the arrearage period. The evidence that the insured was, at the time a tender was made of a sufficient amount to cover the premiums due on November 21, November 28, and December 5, and the premiums for the next two succeeding weeks, in bad health and, suffering from the disease from which he subsequently died, was uncontradicted. So by the terms of the policy it was not only forfeited, but the right to restore it by the payment of these five premiums did not exist. It is contended, however, that the requirement of the policy with reference to the payment of the premiums on Monday of each week had been changed or waived by the course of dealing between the local agent of the insurer at Augusta, Georgia, and the insured, by which a custom had been established of fortnightly instead of weekly premiums, and that therefore there was an arrearage of only one premium, instead of three, when the tender was made by the attorney of the beneficiary. We do not think that there is any merit in this con-

tention. It is, to say the least, very doubtful whether the mere habit of collecting the premiums every two weeks, instead of every week, could have the effect of changing or waiving the conditions of the policy with reference to its forfeiture upon failure to pay three weekly premiums; for, while the policy provided that the premiums should be paid upon Monday of each week, no penalty or forfeiture was incurred by a mere failure to pay one weekly premium, nor for a failure to pay two weekly premiums. So, if the premiums were paid every two weeks, there could be no forfeiture of the policy. But admitting, for the sake of the argument, that an established custom on the part of the association of not insisting upon the payment of each weekly premium as it fell due, but of collecting the premiums at intervals of two weeks, would nullify the provision of the policy providing for its forfeiture whenever premiums for three weeks should be due and unpaid, the evidence fails to show that there was such a custom of the association. The alleged custom, if it existed at all, was between the local collecting agent of the insurer and the insured. From the evidence it appears that this agent was a special agent, whose authority, so far as the record discloses, was limited to the collection of the premiums upon the certificate of insurance. It does not affirmatively appear that he had even this limited authority except during the months of November and December, 1904, as the evidence did not disclose that he acted as agent for a longer period. The policy put the insured upon express notice that agents of the insurer had no authority to discharge contracts, waive forfeitures, or receive premiums in arrears beyond the time specified in the policy. It is obvious, therefore, that the insurance association could not be bound by any acts of its agent in contravention of the terms of the policy, unless it subsequently ratified them. It is not contended that it expressly ratified the acts of the agent in reference to the collection of the premiums. Whether, in view of the provision of the contract that "non-observance of any of the written conditions or requirements of this policy, . . without the written endorsement of approval by the Association through its President or Secretary," should render the policy void, the requirements and conditions of the policy in reference to the payments of premiums could be altered or waived by a mere implied ratification by the association of a course of dealing between its local agent and the insured, contrary to the terms of

the policy, it is not necessary to inquire; for the evidence wholly fails to show such implied ratification. Before ratification by a principal of unauthorized acts of its agent could be implied, there would have to be knowledge by the principal of such acts, and then conduct on its part in reference thereto inconsistent with its repudiation of them. It is clear, therefore, that there could be no implied ratification by the insurance association of a previously unauthorized custom of its local agent in reference to the payment of premiums upon this policy, until the association had notice of such custom. The record wholly fails to show such notice or facts from which it can be legitimately inferred. The home office of the association was in Atlanta, Fulton county, and the special agent collected the premiums on the policy in Richmond county. It does not appear how often he made returns or remittances to the association of his collections, nor does it even appear when he made any return or remittance to it of a premium or premiums collected on this policy. As we have said, so far as the evidence disclosed, he was acting as the agent of the association only during the months of November and December, 1904. Perhaps it may be inferred from his testimony that he was acting as such agent somewhat longer than that, but, if so, there is nothing to show how long he collected premiums due on this policy. Granting that the evidence in this case is sufficient to show a course of dealing between the local and special agent of the insurance association and the insured, with respect to the payment of premiums on the policy, which was not only inconsistent with the terms of the policy but had existed for a sufficient length of time to establish a custom between them as to the payment of the premiums, still the evidence fails to show that the acts of such agent in this particular were either authorized at the time or subsequently ratified by the association. Under the evidence, the association had the right to treat the policy as forfeited for the non-payment of the premiums due, respectively, November 21, November 28, and December 5, 1904; and as the insured was in bad health when a tender sufficient to pay these three premiums and premiums for the two following weeks was made, the policy could not be revived without the consent of the insurer. See *Hutson* v. *Prudential Ins. Co.*, 122 *Ga.* 847. It follows that the judge of the superior court erred in overruling the petition for certiorari.

*Judgment reversed. All the Justices concur.*