GOING v. THE MUTUAL BENEFIT LIFE INSURANCE CO.

1. INSURANCE.—In order to entitle insured to a delivery of an executed policy, he has only to comply with conditions written in the policy.
2. EVIDENCE—SELF-SERVING DECLARATION.—LETTER properly admitted in evidence because a portion of a correspondence introduced, and it states a fact in direct reply to a letter introduced, and it is not a self-serving declaration.
3. IBID.—MESSAGE.—The person delivering a message and receiving the reply is the proper witness to prove both by.
4. PRINCIPAL AND AGENT.—Agency cannot be shown by the declarations of the agent.
5. IBID.—INSURANCE.—PRINTED INSTRUCTIONS of an insurance company to its agent not communicated to insured, cannot be used against him.
6. INSURANCE—WAIVER.—The insured may waive a condition precedent to the delivery of a policy which is *solely* for his benefit.
7. NEW TRIAL—JURIES AND JURY TRIALS—APPEAL.—When the trial Judge instructs the jury that if they find a series of facts one way, then the verdict must be for plaintiff; but if the other, then the reverse, and the Judge refuses a new trial, this Court has no power to interfere.

Before WATTS, J., Union, September, 1899.   Affirmed.

Action on insurance policy by Emma Going against The Mutual Benefit Life Insurance Co.   From verdict and judgment for plaintiff, defendant appeals.

*Messrs. Ansel, Cothran & Cothran,* for appellant, cite: *As to the motion for nonsuit:* 28 S. E. R., 398; 83 Fed., 638; 35 N. E. R., 194; 21 Minn., 217.   *As to excluding the printed*

*rules:* 18 Minn., 449; 38 S. C., 209; 35 S. C., 475. *As to conditions of delivery:* 92 U. S., 377. *New trial should have been ordered:* 16 S. C., 1; 19 S. C., 489.

*Messrs. R. W. Shand* and *James Munro,* contra. The former cites: *What words accompanying an act are admissible:* 17 N. Y., 133; 2 Speer, 610. *Nonsuit cannot be granted when there is some testimony tending to prove the case:* 26 S. C., 189; 45 S. C., 290. *General instructions to agents cannot affect assured:* 70 Am. St. R., 595. *Assured may waive his conditions:* 22 L. R. A., 774; 37 S. C., 439; 35 S. C., 338. *As to refusal to grant new trial:* 31 S. C., 138; 47 S. C., 57; 16 S. C., 14; 19 S. C., 579; 53 S. C., 215; 51 S. C., 405; 25 S. C., 174; 27 S. C., 307; 49 S. C., 460; 21 S. C., 557.

July 11, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This action was brought upon a policy of insurance on the life of the deceased husband of the plaintiff, alleged to have been issued by the defendant company, and payable to her, if she survived her husband, as she did. The defense set up by the company was that the poilcy sued upon had never been delivered, and there was never any completed contract of insurance. While some of the facts are contested, the following seem to be undisputed: On the 4th of May, 1898, J. D. Going, the husband of the plaintiff, made an application for insurance in writing, which is set out in the "Case," and this, together with the certificate of the medical examiner, was forwarded to the home office of the company in Newark, in the State of New Jersey, where it was received and marked "approved," the 9th of May, 1898, and the policy was prepared, bearing date the 10th of May, 1898, signed by the proper officers of the company, and sent to the local agent of the company at Union, South Carolina, through the office of the State agent at Raleigh, North Carolina. Precisely when the policy reached the office of the local agent at Union does not

appear, though there is but little doubt that it was about the 15th of May, 1898, when Mr. L. S. Townsend, the local agent, was absent from home, and did not return until about the 15th or 20th of June, 1898. Nor did it distinctly appear at what time the assured, J. D. Going, learned that the policy had been returned to Union, but it must have been on or before the 29th of June, 1898, for on that day the judge of probate, accompanied by B. B. Going, brother of the assured, at his request, called on Mr. Townsend, the local agent, and tendered him the amount of the first premium, which the local agent refused to accept, for the reason, as he said, the company would not allow him to deliver policies to sick men. On the 28th of May, 1898, the assured was taken sick with what proved to be typhoid fever, and on the 29th of June, when the tender was made, was very sick, and he subsequently died on the 2d of July, 1898. Soon after this, Messrs. Munro & Munro, attorneys at law, having been employed to collect the insurance, called on the local agent, Mr. Townsend, for blanks to make out the claim, and were referred by him to Mr. Pearson, the vice-president of the company, and they thereupon wrote him a letter, under date of 28th of July, 1898, demanding payment of the policy of insurance issued by the company, which "your agent afterwards refused to deliver," and also for blanks for proofs of death if required. To this letter the vice-president of the company replied by letter, under date of 1st August, 1898, saying: "That the contract of insurance, to which you refer, was not completed by Mr. James D. Going, as he did not pay the premium. There is, therefore, no claim against this company because of said contract." These two letters were received in evidence without objection; but when the plaintiff offered to introduce a letter of the Messrs. Munro in reply to the letter of the vice-president of the company, objection was made, which objection was overruled and the letter was read in evidence, in which the Messrs. Munro, after acknowledging the receipt of the letter of the vice-president, use this language: "Mr. Going, as you say, did

not pay the premium, but the full amount of the premium was tendered to your agent, and demand made for the policy in the lifetime of Mr. Going.    It seems to us that there is a claim against your company because of the contract, and we trust you will reconsider the matter and pay the policy." To this letter no reply was received, and on the 14th of December, 1898, this action was commenced.

At the close of the testimony for the plaintiff, the defendant moved for a nonsuit upon the ground that the plaintiff had failed to prove a completed contract, inasmuch as it was claimed that delivery of the policy was essential to complete the contract, and there was no evidence of either actual or constructive delivery of the policy.    The motion was refused, and exception taken by defendant's counsel.

The defendant then offered its testimony, in the course of which certain exceptions were taken as to the rulings of the Circuit Judge upon the admissibility of some of the testimony offered by defendant.    The case went to the jury under the charge of the Judge, to which certain exceptions were taken, and a verdict having been rendered in favor of the plaintiff, a motion for a new trial on the minutes was made, which being refused, judgment was entered upon the verdict.    From this judgment defendant appeals upon the several exceptions set out in the record.    These exceptions impute error to the Circuit Judge: 1st. In refusing the motion for a nonsuit.    2d. In his rulings as to the admissibility of testimony.    3d. In his charge; and 4th. In refusing the motion for a new trial.

First, as to the motion for a nonsuit, which was based upon the ground "that the plaintiff has failed to prove a completed contract."    Now, on a motion for a nonsuit, the question is *not* whether the plaintiff has failed to *prove* his case, but the only question is whether the plaintiff has failed to produce any testimony *tending to prove* his case.    Assuming the view most favorable to the appellant, that the real meaning of this ground is that there was no testimony tending to show a completed contract, we

will proceed to consider the question in that aspect.    While
it is conceded that there was testimony tending to show that
the policy which evidenced the contract sued on, was sent
to the local agent by the defendant company for the purpose
of being delivered to the assured, yet the contention is that,
while that would amount to a constructive delivery to the
assured, provided it was sent for unconditional delivery, yet
as there were two conditions—one that the first premium
should be paid, and the other that the policy should not be
delivered if the assured was at the time sick; and that while
the first might be regarded as having been complied with by
the tender of the amount of the first premium, yet there was
no testimony that the second—that the assured was in good
health at the time—was complied with, and there was, there-
fore, no testimony that the contract had ever been completed,
and that, on the contrary, the testimony on the part of the
plaintiff showed that when the first premium was tendered
and the policy was demanded, the assured was very sick, and
died in a few days thereafter.    It is very obvious that this
position of appellant rests entirely upon the assumption that
the testimony on the part of the plaintiff tended to show that
the policy was sent by the company to its local agent, not for
unconditional delivery, but that it was sent for delivery upon
the compliance of the assured with the two conditions above
stated.    Now, while it is true that the policy does contain
these words: "This policy does not take effect until the first
premium shall have been actually paid during the lifetime of
the insured;" which necessarily imply that the policy was not
to be delivered until that condition was complied with, yet
there is not a single word in the policy which implies or even
intimates that there was any other condition upon which
the policy is to take effect or be delivered.    On the con-
trary, it is expressly declared in the policy itself that the de-
fendant company "has, by its president and secretary, signed
and delivered this contract," on the 10th of May, 1898—
which it will be noted was the day after the application for
insurance had been received and marked "approved;" and

counsel for respondent has cited an authority (Bliss on Life Ins., sec. 153,) which is based upon the case of *Xenos* v. *Wickham,* 2 L. R., House of Lords Cases, 296 (also reported English and Irish Appeal Cases, vol. 2, 296), in which it was held that a policy purporting to be "signed, sealed and delivered" by the proper officers of an insurance company, must be conclusively taken, as against the company, to have been not only duly signed and sealed, but also duly delivered; and that such a policy is complete and binding against the party executing it, though, in fact, it remains in his possession, unless there is some particular act required to be done by the other party to declare his adoption of it, and that it is not necessary that the assured shall formally accept or take away a policy, in order to make the delivery complete. Now, in the case before the Court, the only act remaining to be done by the assured, after it was executed, so far as the contract on its face shows, was for the assured to pay the first premium, which was, in effect, done during the lifetime of the assured, by the tender of the amount of such premium, which, it is conceded, and properly conceded, was equivalent to payment; and so that condition was complied with, and the contract was completed. It is contended, however, by the appellant that there was another condition to the delivery of the policy which was not, and could not, have been complied with at the time the delivery of the policy was demanded, to wit: that the assured must then have been shown to be in good health, which was not only not shown, but, on the contrary, the testimony tended to show that the assured was, at the time, very sick of a disease from which he died in a few days thereafter. But it is very obvious that the policy, which constitutes the contract between the parties, contained no such condition, and the attempt is to raise such a condition by the testimony as to the instructions given to the local agent by the company. Whether it would be competent to annex to a written contract any other condition than that contained in the written contract, is a question which we do not propose to consider

at present, as no such question seems to have been made up to the time when the motion for a nonsuit was submitted. Assuming, then, for the purposes of this particular inquiry only, that such testimony was competent, it is apparent that the only testimony which had then been offered (for, of course, in considering a motion for a nonsuit our attention must be confined to the testimony of the plaintiff offered in chief) was the simple declaration of the local agent as to the reason why he refused the tender made of the first premium, which was that "the company would not allow him to deliver policies to sick men," as testified by Mr. Greer, one of the parties who made the tender; though the other witness, B. B. Going, who went with Greer to make the tender, did not remember that the local agent gave any such reason for refusing to accept the money when tendered, but that his reply was: "He said he had the policy—the paper; it was all right, but he would not accept the money;" and when that witness was recalled, he testified as follows: "Q. When you went there to Mr. Townsend to tender the money, what did he say?" Objected to by counsel for defendant, because it was incompetent to prove by this witness declarations of the agent as to what the company had done. Objections overruled, and the witness testified as follows: "A. He said he would not take the money. He said he had the policy, and he said it had been accepted, the company had accepted it, but he would not take the money." The only other testimony to which we deem it necessary to refer in this connection is that of the correspondence between the Messrs. Munro, as attorneys for the plaintiff, and the vice-president of the defendant company, to whom they had been referred by the local agent, in which the vice-president, in his letter, denies the liability of the company solely upon the ground that the contract had not been completed by the assured, "as he did not pay the premium"—making no allusion whatever to any other condition, or alleged condition, in the contract. These two letters were received in evidence without objection; but when the letter of the Messrs. Munro, in reply to

that of the vice-president, was offered, objection was made upon the ground that "it is simply the opinion of a distinguished lawyer;" but the objection was overruled and the letter received in evidence, very properly, as we shall see when we come to consider the second general question in the case. This being the state of the testimony when the motion for a nonsuit was submitted, we think it clear that there was no error in refusing the motion; for there was no doubt that the first condition upon which the policy was to take effect, as stated in the policy—the payment of the first premium—was, in law, complied with by the tender, which was undisputed; and whether there was any other condition, depended entirely upon the view which should be taken of the testimony; and that was a matter to be determined by the jury.

We proceed next to the consideration of the second general question, involving the inquiry whether there was error in any of the rulings as to the admissibility of testimony specified in the second, third, fourth and fifth exceptions. In the second exception the error complained of is the admission of the letter of the Messrs. Munro in reply to the vice-president of the company, hereinabove referred to. It will be observed that the objection made at the time this letter was offered was based solely upon the ground that "it is simply the opinion of a distinguished lawyer;" but in the second exception it is claimed that this letter was incompetent, for a wholly different reason, to wit: because "it is in the nature of self-serving declarations." Strictly speaking, therefore, this exception could not be considered; but waiving this, we think the letter was clearly competent, in either view. In the first place, it was but a part of a correspondence, a portion of which had been received without objection. In the next place, the manifest purpose of the letter was to correct a misapprehension under which the vice-president seemed to be laboring; for, as we have said, the vice-president in his letter, which was received without objection, had based his denial of responsibility entirely upon

the ground that the first premium had not been paid; which while true, as matter of fact, as the money had not actually been *paid,* yet it was not true, as matter of law, as the undisputed fact was that the money had been *tendered* during the lifetime of the assured; which, as it was properly conceded, was equivalent to payment. The manifest object of the letter in question was simply to correct this misapprehension on the part of the vice-president, by calling his attention to the fact that the tender had been made—a fact of which he, possibly, may have been ignorant. The letter was not objectionable as to the opinion of a distinguished lawyer, for such was not its purpose; and the only opinion expressed in it was that, in view of the fact of the tender to which the attention of the vice-president was called, the writer thought that he might take a different view from that expressed in his letter to which this was a reply. At all events, the letter could, in no aspect, be regarded as anything more than the expression of Mr. Munro's opinion that tender would be equivalent to payment in a case like this—an opinion in which this Court, as well as every one connected with this case, seem to concur. Nor is the letter objectionable as "in the nature of self-serving declarations;" for the only fact stated in it was a fact about which there was no dispute— that the amount of the first premium had been tendered during the lifetime of the assured. In no view that we have been able to take was the letter in question incompetent; and to have rejected it could have worked great injustice to the plaintiff, by allowing a garbled correspondence to go before the jury. It would have been like allowing a part only of a conversation between parties to be offered. The second exception must, therefore, be overruled.

The third and fourth exceptions being of a similar character, may be considered together. It seems that when Mrs. L. S. Townsend, the wife of the local agent, was on the stand, after testifying that she was in the habit of opening her husband's business letters in his absence,

14—58

and had received the policy in this case, she was asked what message she had sent assured when she received the policy, to which objection was made; and the Court ruled that this would be incompetent unless it was made to appear that such message had been received by the assured. Then the witness, J. A. Brown, was asked whether he heard Mrs. Townsend give a message for J. D. Going to any one, to which he replied yes, that he heard her deliver a message to Oliver Going; but when he was asked what that message was, the Court made the same ruling as above. The witness was then asked what Oliver Going had told him the next morning in reference to the message, which was ruled out as hearsay. We see no error in any of these rulings. If the defendant desired to prove that a message had been sent to J. D. Going, the assured, the proper witness to prove that fact would be the person who delivered the message to J. D. Going, and if it was desired to prove what was the reply of J. D. Going to such message, the proper witness to prove that fact would have been the person who received the reply.

The claim that Oliver Going, the person selected to carry the alleged message to J. D. Going, was the *mutual* agent of the parties, is not sustained by any testimony competent for that purpose; for it is well settled that agency cannot be proved by the mere declarations of the alleged agent; for there is no evidence that any message was ever received by J. D. Going from any one, or that any reply to such alleged message was ever sent by J. D. Going. If any such message was ever sent to J. D. Going by Oliver Going, the defendant had the ready means of proving it by putting Oliver Going on the stand as a witness, but this was not done; and surely the defendant cannot be allowed to supply that testimony by offering a third person as a witness to prove the declarations of Oliver Going, as that would be purely hearsay testimony. This view is sustained by *McGee* v. *French*, 49 S. C., 454. The third and fourth exceptions must, therefore, be overruled.

The fifth exception, imputing error to the Circuit Judge

in refusing to receive in evidence the printed rules of the defendant company furnished to its agents, by which an agent is forbidden to deliver a policy unless the first premium has been paid, and unless the assured is in good health at the time, cannot be sustained, for two reasons: 1st. Because we think the ruling was right. 2d. Because, even if erroneous, it was harmless error. At the time this book, called the agent's manual, containing the rules for the guidance of agents, was offered in evidence, no testimony had been offered tending to show that the assured had ever been informed of these rules or assented thereto, and, therefore, the testimony was clearly incompetent, under the case of *Riordan* v. *Doty,* 50 S. C., at page 547. Besides, upon principle, we think that the private instructions given by a corporation to an agent to govern his dealings with third persons on behalf of the corporation should not be received unless made known to the persons with whom they deal. Especially should this be the rule in a case like this, where a policy of insurance which contains the terms of the contract is sought to be avoided by some private instruction to the agent not made known to the applicant when he takes out his policy. It is true, that *after* the ruling excepted to was made, the local agent did testify that he did tell the assured, at the time he was examined by the doctor, that, if he did not then make payment of the premium, he could not deliver the policy when it was returned approved by the company, if he was then seriously sick; but, of course, the correctness of the ruling must be tested by the testimony as it appeared at the time the ruling was made, and the question could not be affected by any testimony offered afterwards. But even if there was error in ruling out the printed instructions to the agents, yet such error was manifestly harmless; for the agent was afterwards permitted (whether correctly or not we cannot undertake to decide in this case, as there was no objection, or rather no exception taken to such testimony,) to testify that his instructions from the company were not to deliver any policy until the first pre-

mium was paid, and not then unless the applicant was then in good health. So that the company got the same benefit from these instructions as if the book had been admitted in evidence when it was offered. The fifth exception must, therefore, be overruled.

. The sixth exception is based upon an alleged error in the charge of the Circuit Judge, or rather in his modification of . a request to charge, submitted by the defendant. It seems that there was some testimony tending to show that in the conversation between the local agent and the assured on the day of the medical examination, the assured had been told by the agent that if, when the policy was returned, there was anything in it that he did not understand, or that it was not exactly as he understood it was to be, he would not be obliged to take the policy, to which the assured assented; and upon that testimony the Circuit Judge was requested to charge the jury, "upon the effect of that agreement, if they believe the testimony of Mr. Townsend, that the contract was, therefore, not completed until Mr. Going had an opportunity to examine that policy, and he examined it and signified his acceptance of the policy, and that he could not when seriously sick take advantage of the change of affairs then to tender the money without an examination, without any acceptance of the policy, and demand the policy and tender payment." In response to that request the jury were charged as follows: "If there was an understanding or agreement between the agent of the company here and Mr. Going, that Mr. Going should inspect that policy before he paid the premium, should have a chance to look at it and see whether or not he should accept it, then I charge you as a matter of law, the contract would not be complete until he had inspected it, *or waived his right to inspect it,* and signified his willingness to accept it; but if he went there and accepted it just as it was, and tendered the premium, or if he sent anybody there for that purpose, and the company had sent the policy to their agent with the intent to deliver it to Going, if he paid the premium and accepted

that policy as insurance on his life, then the plaintiff would be entitled to recover." The point of the exception lies in the insertion of the words which we have italicized, "or waived his right to inspect it." In this there certainly was no error, for the reservation of the right to examine the terms of the policy before paying the premium and accepting the policy, was for the benefit of the assured *solely;* and if he chose to waive that right, the other party surely had no reason to complain. Indeed, this exception seems designed to raise in another form, the point on which the defense was really rested, that there was a condition in the contract whereby the policy was not to be delivered unless the assured was in good health when the premium was tendered and the policy was demanded. Whether there was such a condition, was a question of fact depending upon the testimony, of which the jury were the sole judges; and they having solved that question in favor of the plaintiff, under instructions to which no exceptions were or could be taken by the defendant—that if they believed there was such a condition, and the same was not complied with—then their verdict should be for the defendant, and this must be an end of the matter. The sixth exception must, therefore, be overruled.

The seventh and last exception imputes error to the Circuit Judge in refusing the motion for a new trial, for three reasons: 1st. Because of error in excluding the printed rules of the company, containing instructions to agents as to the delivery of policies. This has been already disposed of by what we have said in considering the fifth exception. 2d. Because there was no dispute as to the facts of the case, and under the law as given to the jury by the Court, they were bound to render a verdict for the defendant. The third ground of the motion for a new trial is practically involved in the second, and they may, therefore, be considered together. The rule, as we understand it, is that where, as in the cases of *Dent* v. *Bryce,* 16 S. C., 4, and *Thompson* v. *Lee,* 19 S. C., 489, the Judge directs a verdict, and

the jury disregard such direction and find a verdict contrary to that directed, then it is the duty of the Circuit Judge to set aside the verdict and grant a new trial; and if he refuses to do so, then there is such error of law as this Court may correct.    But where, as in this case, the jury were instructed that if, from the testimony, they believed a certain fact or series of facts, then their verdict should be for the plaintiff or defendant (as the case may be); but if from the testimony they did not believe such fact or series of facts, their verdict should be the other way, then a motion for a new trial presents a question for the discretion of the Circuit Judge, with which this Court has no power to interfere.    It cannot properly be said that there was no dispute as to the material facts of this case.    In the first place, there was testimony tending to show that the policy which had been approved by the company was returned to the local agent at Union for delivery to the assured at least ten days before the assured was taken sick, but there is no evidence that the assured received any notice to that effect until the 29th of June, 1898, when the assured, being quite sick at the time, sent his brother and a friend to the local agent to pay the premium and demand the policy.    What occurred between the agent and these gentlemen when the premium was tendered was, at least, left in some doubt by the testimony, as one of them testified that the agent simply refused to accept the tender without giving any reason for such refusal, while the other said that the reason he gave was that "the company would not allow him to deliver policies to sick men."    Not a word was said as to his having any general or special instructions to this effect from the company—just simply the bald declaration above quoted, which might have been a mere expression of opinion upon the part of the agent. Then, too, there is another significant circumstance which appears in the testimony, and that is when demand was made on the company for payment of the policy, the vice-president denies responsibility solely upon the ground that the first premium had not been paid, and makes no allusion

to the non-compliance with any other condition; and even when he is informed by Mr. Munro's second letter, that while it was true that the premium had not, in fact, been *paid,* yet had been *tendered,* which, in his view, was equiva- lent to payment, he makes no reply whatever.    From this testimony it is possible that the jury may have inferred that there was, in fact, no condition that the policy was not to be delivered, if the assured was not in good health at the time, and that such condition was an after thought.    Be that as it may, however, it was a question of fact for the jury, and with their finding we have neither the power nor the disposition to interfere.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.