JOHN HANCOCK MUT. LIFE INS. CO. v. McCLURE.

(Circuit Court of Appeals, Third Circuit. December 29, 1914.)

No. 1886.

INSURANCE (§ 136*)—LIFE POLICIES—DELIVERY.

An application for certain life policies provided that any policy that might be issued thereon should take effect only in case it should be delivered and the first premium or installment thereof actually paid during the lifetime of insured, which delivery and payment should constitute an acceptance of the policy and of all of its conditions. Policies, having been issued, were sent to the soliciting agent for delivery; but, insured at that time having contracted pneumonia, the agent, in accordance with standing instructions, did not deliver the policies, informing insured's wife that he would wait, and ascertain the result of his illness, and, insured having died within a few days, the policies were never actually delivered, nor the premium paid. *Held*, that the policies never took effect as contracts of insurance binding the insurer, and this without reference to whether the agent had undertaken to deliver the policies at once, on his receipt thereof.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 219–230; Dec. Dig. § 136.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; William H. Hunt, Judge.

Action by Elizabeth Gertrude McClure against the John Hancock Mutual Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed, and venire de novo awarded.

John M. Freeman, of Pittsburgh, Pa., for plaintiff in error.
W. Clyde Grubbs, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

J. B. McPHERSON, Circuit Judge. This suit was brought by Elizabeth McClure of Pittsburgh, Pa., the widow of Harry McClure, and the beneficiary under two policies of life insurance, of $2,000 and $3,000, respectively. The policies were applied for by her husband, and were executed by the John Hancock Mutual Life Insurance Company at the home office in Boston and transmitted to the company's general agent in Pittsburgh. They were never delivered to the deceased, who died a few days after they reached Pittsburgh, and the plaintiff's position is that the company was bound to deliver, and therefore could not affect her right by refusing. The facts are as follows:

About the middle of March, 1912, Arthur Stroyd, who was merely a soliciting agent of the company, without authority to make contracts, approached the deceased on the subject of insuring his life. After some preliminary talk the agent called at the house of the deceased on March 18th or 19th with various papers relating to the matter, among them an application and a sample policy. These were discussed and explained, and the sample policy was left with the deceased. There is some dispute concerning the conversation that took place, but there is no doubt that the interview resulted in the signing of the application.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It asks for two ordinary life policies in favor of the plaintiff, in $2,000 and $3,000, and contains the agreement:

"That any policy which may be issued hereon shall take effect only in case it shall be delivered and the first premium or installment thereof actually paid during my lifetime, and that such delivery and payment shall constitute an acceptance of the policy and of all its conditions."

The sample policy contained the following provisions, inter alia:

"In consideration of the representations in the application hereof, which is copied hereon and hereby made a part hereof, and of the premium," etc., "the John Hancock Mutual Life Insurance Company hereby insures the life of Harry A. McClure, * * * subject to the conditions and provisions hereinafter recited," etc.

"When in Effect. This policy shall not take effect until the first premium or regular installment as herein provided shall be actually paid during the lifetime of the insured.

"Policy and Application Entire Contract. This policy and the application herefor constitute the entire contract between the parties hereto. * * *

"Alteration and Indorsement. No modification or alteration hereof or indorsement hereon will be valid unless made by the president, a vice president, the secretary, or an assistant secretary, and no other person is authorized on behalf of the company to make, alter, or discharge this contract or to waive forfeiture. Agents are not authorized to modify or waive any of the terms and conditions of this policy, nor to extend the time for payment of premiums or other moneys due to the company, or to bind the company by making any promise or by accepting any representation or information not contained in the application for this policy."

The application is dated March 19th, the medical examination took place on March 20th, and the policies were executed in Boston on March 23d. They were mailed immediately to the general agent in Pittsburgh, and arrived there on the morning of March 25th. During the same day they were handed to Mr. Stroyd for the purpose of delivery and collection of the premium. Meanwhile, however, the deceased had taken sick, and had consulted a physician on March 24th for what then appeared to be a severe cold. From that time forward he was continuously at home, and nearly all the time in bed, under medical treatment, until his death from pneumonia on March 31st. On March 25th, therefore, when Mr. Stroyd called up the deceased's home on the telephone and asked to see him, he was sick, and was so reported by the plaintiff in reply to the call. Thereupon the agent said that he would wait a few days before delivering the policies, in order to see what the result of the sickness might be. The plaintiff rejoined, telling the agent to deliver the policies at once and get the premium; but this was not done, and the plaintiff took no further steps until the end of August, when the present suit was brought. Stroyd was acting under the following standing instructions from the company:

"Delivery of Policies. 'Delivery' of a policy means the act of placing it in the insured's hands in exchange for the initial premium.

"(a) Policies may be delivered within thirty-one days from the date of issue without the requirement of a health certificate, provided the agent sees the insured and finds him to be in good health at the time. If there be any reason to suspect that the insured is not in good health, the policy must be returned to the company, with a statement of the facts."

There was some dispute about what happened when the application was signed. The plaintiff testified that the agent agreed to deliver

the policies on March 22d; but, even if he undertook to do so, he was obviously promising what he could not be sure of performing, for (as the parties knew) the medical examination had to take place, and the application had to go from Pittsburgh to the home office in Boston for consideration and action there, so that the time of its return to Pittsburgh was necessarily uncertain. But, in any event, such an undertaking by the agent was immaterial. The important point is that no part of the premium was paid when the application was signed, and that nothing was to be paid until the application was accepted and the policies were delivered. The contract was not to be complete until delivery and payment, or their equivalent, should take place.

And this brings us to a decisive point in the case. The contract being incomplete until delivery of the policies and payment of the premium, we think it clear that upon the uncontradicted evidence the plaintiff had no right to recover. The following quotation from the charge —the italics being ours—will show the theory upon which the case was put to the jury:

"Now, I believe it to be true that Mr. Stroyd had the authority to deliver those policies under such an arrangement as she testifies was entered into, provided, of course, it was that he was to deliver the policies and receive the money, and that the insurance would be good, *without relation to any condition of health that the assured might have been found in at the time of the delivery of the policies.* But whether he entered into that arrangement is the vital point in the case. Mr. Stroyd says that there was no absolute agreement whatsoever to deliver; that he told Mr. McClure that he would get the policies, and that he endeavored to have him enter into a binder contract—a binder contract being where there is an arrangement made whereunder the contract becomes effective the moment the binder is signed and the company at the home office accepts the risk.

"Now in this case the home office did, so far as devolves upon it, apparently accept the risk. They returned the policies to Pittsburgh, there to be intrusted to the agents, to be delivered apparently pursuant to any arrangement that the agents had entered into with the assured. So we come right back to the vital question, gentlemen, what was the arrangement? If Mr. Stroyd is correct, Mr. McClure positively declined to agree to take any insurance, and said he would not bind himself to take any, but would wait until the policies came, and then determine whether he wanted any insurance or not. And, of course, if that was the arrangement, then there was no valid contract upon which this lady can recover. But if it was as she says, that Mr. Stroyd made a promise of delivery upon payment of the premium when the policies were received, and that he notified her that he had them, and she said, 'The money is here; bring them over'—if he had agreed to do that, and she offered the money over the telephone, she can recover."

In our opinion, the foregoing paragraph proceeds upon an erroneous theory. The company was not bound to deliver the policies after the applicant had contracted the illness referred to, for this fact materially changed the condition of the subject to be insured. The application asked for insurance upon the life of a man declared to be in good health, and it was this proposal that the company accepted. As the applicant had ceased to be in good health, he was no longer able to furnish the insurable subject proposed; and, as the contract by its very terms was not to be complete until the policies should be delivered and the premium paid, it seems plain to us that the company was not bound to perform, at least until the original situation should be restored. Certainly (in the absence of an express agreement so to do) a fire in-

surance company could not be called upon to issue a policy upon a house already attacked or dangerously threatened by fire, although the company might have been willing to accept an application that had been made before the danger arose. The present situation seems to be closely analogous. We think ample authority for the conclusion we have reached will be found in the following cases: Giddings v. Insurance Co., 102 U. S. 111, 26 L. Ed. 92; Insurance Co. v. Ewing, 92 U. S. 377, 23 L. Ed. 610; Insurance Co. v. McElroy (C. C. A. 8th Cir.) 83 Fed. 631, 28 C. C. A. 365; Kohen v. Life Ass'n (C. C.) 28 Fed. 705; Misselhorn v. Life Ass'n (C. C.) 30 Fed. 545; Ray v. Insurance Co., 126 N. C. 166, 35 S. E. 246; McCully v. Insurance Co., 18 W. Va. 782; Schwartz v. Insurance Co., 18 Minn. 448 (Gil. 404). The jury should have been instructed to find for the defendant.

The judgment is reversed, and a new venire is awarded.