WHITE v. METROPOLITAN LIFE INS. CO.

No. 4013.   Decided January 9, 1924.   Rehearing denied April 10,
1924.   (224 Pac. 1106.)

INSURANCE—APPLICATION HELD TO GIVE COMPANY RIGHT TO REFUSE
TO ACCEPT PAYMENT OF FIRST PREMIUM.   Provision of applica-
tion for life insurance, that the company "shall incur no lia-
bility under * * * (it) until it has been received, approved,
and the policy issued and delivered and the full first premium
* * * has actually been paid to and accepted by the company
during the lifetime of the life proposed," gives the company the
right, after the policy has been sent to the local agent, and he
has notified applicant thereof, to refuse to accept payment of
the first premium, and to refuse to deliver the policy, though
premium is tendered.[1]

Appeal from District Court, Third District, Salt Lake
County; M. L. Ritchie, Judge.

_____

[1] Sterling v. Head Camp, Pacific Jurisdiction, 28 Utah, 505, 80
Pac. 375; Lombard v. Columbia Life Ins. Co., 50 Utah, 564, 168 Pac.
272.

Action by Zina T. White against the Metropolitan Life Insurance Company. Judgment for plaintiff, and defendant appeals.

REVERSED.

*W. H. Leary* and *W. H. Bramel,* both of Salt Lake City, for appellant.

*C. E. Marks* and *Hurd & Hurd,* all of Salt Lake City, for respondent.

THURMAN, J.

This is an action by plaintiff to recover judgment on a policy of insurance alleged to have been issued by the defendant company upon the life of her husband, Alvin B. White. Plaintiff sues as beneficiary of the policy. Plaintiff had judgment in the court below and defendant appeals. The errors assigned are denial of defendant's motion for a directed verdict and its motion for a new trial; also error of the court in directing a verdict for the plaintiff.

The material facts are substantially as follows: On the 6th day of November, 1918, Alvin B. White made application to the defendant company through its local agent in Salt Lake City for $2,500 life insurance, naming plaintiff as beneficiary of the policy. At the time of making the application he paid the company the sum of $5, for which the company gave him a receipt in the following form:

"Received from Mr. Alvin B. White five dollars on account of application made this date for insurance in the Metropolitan Life Insurance Company. Said amount is to be applied by said company, or to be returned to applicant if the company shall decline this application. If a policy is issued and the applicant refuses to accept it and pay the balance of the first premium this advance payment will be forfeited to the company. No insurance is in force upon the application unless and until a policy is issued thereon and delivered in accordance with its terms.

"A. A. Dunn,

"District Salt Lake.

"11—6—1918.

"If policy is not delivered to you in 60 days from date this receipt must be presented to the district or home office for redemption."

The applicant was examined by defendant's medical examiner at the time of making the application, and the evidence tends to show it was agreed between applicant and the company's agent that the unpaid balance of the first quarter premium might þe paid on the first day of the next succeeding month. Within a week or ten days after the application was made, a policy of insurance was made on the application by the home company and forwarded to the local agent in Salt Lake City. The agent called at the home of applicant and notified his wife, the plaintiff, that the policy had been received. She informed the agent that her husband would pay the balance of the first quarter premium on the first of the next month. As the first of the month occurred on Sunday, nothing was done concerning the payment of the premium until the next night when the applicant requested his father to have applicant's brother collect applicant's wages then due from his employer and pay to defendant the balance of the stipulated premium. On the next day (December 3d) applicant's brother having procured the necessary funds appeared at the office of defendant in Salt Lake City for the purpose of paying the balance of the premium. The clerks in the office were unable to find the policy, and apparently not understanding the business referred him to the superintendent, Mr. Beckstead, who at the time was absent from the office. At any rate, some time during the day (December 3d) applicant's brother got in communication with the superintendent and informed him that he was prepared to pay the balance of the premium. The superintendent inquired as to the condition of applicant, who had not appeared in person, and applicant's brother informed him that he did not know but would find out and let him know the next day. On the following morning (December 4th) he called the superintendent by 'phone and informed

him that the applicant had been "sent to bed by the doctor" on the night of December 2d with a slight case of "flu." Thereupon the superintendent informed him that he could not accept payment of the premium or deliver the policy. The $5 paid by applicant at the time of making the application was returned to plaintiff within a month afterwards. Applicant died December 8, 1918. Due proof was made of loss and demand made for payment of the policy, which demand was refused.

Appellant contends there was no completed contract of insurance, and relies principally upon the following stipulation contained in the application:

"It is agreed that, inasmuch as only the officers at the home office of the company in the state of New York have authority to determine whether or not a policy shall issue upon this application, and as they act on the written statements, answers and agreements herein made, no statements, promises or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company or in any manner affect its rights unless such statements, promises or information be reduced to writing and presented to the officers of the company at its home office. It is further agreed that the company shall incur no liability under this application until it has been received, approved and the policy issued and delivered and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the life proposed."

The last sentence of the excerpt above quoted, together with the undisputed facts, is especially relied on by appellant as showing that no contract of insurance was consummated between the parties.

It is earnestly insisted by appellant, under said provision, that it had the right to refuse to accept payment of the balance of the premium and also to refuse to deliver the policy.

Appellant quotes the following excerpt from the opinion of this court in *Sterling* v. *Head Camp, Pacific Jurisdiction*, 28 Utah, 505, 80 Pac. 375. The quotation commences on page 520 (80 Pac. 380):

"It certainly must be conceded that it was competent for the parties to stipulate when and upon what conditions their proposed

contract should become operative and take effect, and could have conditioned it upon delivery of the contract, payment of premiums, some fixed time, or any other reasonable condition; and when the parties have done so, in such clear terms as here, courts should not seek means to contravene and frustrate the terms of such stipulations, and thereby defeat the intention of the parties, thus plainly expressed."

In the same connection and as illustrative of the same rule appellant quotes from the concurring opinion of Mr. Justice Frick in *Lombard* v. *Columbia Life Ins. Co.*, 50 Utah, at page 564, 168 Pac. 272, the following language:

"There can be no doubt that such a provision in the application, and especially if made a part of the policy, is valid and binding on both parties to the contract. 25 Cyc. 725, and cases there cited. Nor is there any doubt that such a provision may be waived by the company. Same volume, p. 730. It is also settled beyond dispute that the contents of the application and of the policy, if the application is made a part of the policy, constitute the contract of insurance."

The provision referred to in the excerpt last quoted was to the effect that the insurance should not take effect until the issuance and delivery of the policy and the payment of the first premium while the insured was in sound health.

There is no such provision in the application or policy in the case at bar, but appellant earnestly contends that the doctrine enunciated in the excerpt above quoted applies with equal force and effect to any lawful stipulation the parties may agree to as a condition precedent to a policy of insurance becoming effective. In this case the agreement is that the insurance company—

"shall incur no liability under this application until it has been received, approved and the policy issued and delivered and the full first premium stipulated in the policy has actually been *paid to and accepted by the company* during the lifetime of the life proposed."

I have italicized certain words in the above quotation, for it appears to me that the words italicized constitute the crux of the controversy involved in this appeal.

Cases too numerous to mention can be found holding that when an application has been made, presented and approved and a policy prepared and returned to the local agent for delivery when the premium has been paid, such will consti-

tute a contract of insurance enforceable by the beneficiary, even though the policy is not in fact delivered either to the insured in his lifetime or to his beneficiary afterwards. Such is the case of *Lombard* v. *Insurance Company,* supra, and cases therein cited. It may also be conceded that the weight of authority is that, where a contract of insurance is complete, except the payment of the premium, and such payment is tendered in time and refused, the contract of insurance is nevertheless complete and enforceable against the insurer. This concession as to what the majority of the cases hold, and what appears to be the weight of authority, renders it unnecessary to review in detail many of the cases cited in the briefs of the contending parties. Nevertheless, we shall cite the cases as they illustrate the rule that while contracts of insurance are construed liberally in favor of the insured, they are, nevertheless, to be construed according to the manifest intention of the parties.

Many of the cases relied on by appellant are cases in which there is a provision, either in the application or the policy or both, to the effect that the policy shall not be effective unless the insured is in good health when the policy is delivered. This provision is generally enforced. In a few of the cases cited it is held that, where the application or policy does not contain such provision, but the local agent is instructed, either by rule or special instruction, not to deliver the policy unless the applicant is in good health, the insurance is not effective, even though the applicant had no knowledge of such provision. *John Hancock Mutual Life Ins. Co.* v. *McClure,* 218 Fed. 597, 134 C. C. A. 355; *Schwartz* v. *Germania Life Ins. Co.,* 18 Minn. (Gil. 404) 448, and other cases cited. I am of opinion the cases last cited are opposed to reason as well as the numerical preponderance of authority. The universally accepted rule that contracts of insurance should be construed liberally in favor of the insured forbids the interpolation into the contract of a provision not agreed to by the applicant.

Other cases cited by appellant go to the point that the contract is not complete until delivery of the policy when there

is a provision in the contract to that effect. This, of course, is subject to the rule announced in *Lombard* v. *Insurance Co.*, supra. Still other cases deal with miscellaneous provisions in insurance contracts, impracticable to classify without taking upon ourselves an unnecessary burden. It is sufficient to say that the cases relied on by appellant generally go to the point that the parties to the insurance have the right to insert such stipulations or limitations in the contract as they may deem proper for their own protection, and unless they are unlawful, the courts will enforce them. The following cases cited by appellant, in addition to those already referred to, illustrate the rule: *Life Insurance* v. *Young*, 90 U. S. (23 Wall.) 85, 23 L. Ed. 152; Joyce, Insurance (2d Ed.) §§ 54 and 70; *Mesloh* v. *Life Insurance Co.*, 111 Kan. 409, 207 Pac. 754; *McCully's Adm'r* v. *Insurance Co.*, 18 W. Va. 782; *Ray* v. *Insurance Co.*, 126 N. C. 166, 35 S. E. 246; *McKenzie* v. *Life Insurance Co.*, 26 Ga. App. 225, 105 S. E. 720; *Hawly* v. *Insurance Co.*, 92 Iowa, 593, 61 N. W. 201; *Life Insurance Co.* v. *Melton* (Tex. Civ. App.) 144 S. W. 362; *Markey* v. *Life Insurance Co.*, 103 Mass. 78; *Bowen* v. *Life Insurance Co.*, 178 Mich. 63, 144 N. W. 543, 51 L. R. A. (N. S.) 587; *Ellis* v. *Life Insurance Co.*, 206 Ill. App. 226; *Kilcullen* v. *Met. Life Ins. Co.*, 108 Mo. App. 61, 82 S. W. 966; *Kohan* v. *Life Ins. Co.* (C. C.) 28 Fed. 705; *Misselhorn* v. *Life Ins. Co.* (C. C.) 30 Fed. 545; *Oliver* v. *Life Ins. Co.*, 97 Va. 134, 33 S. E. 536; *Ansin* v. *Life Ins. Co.*, 241 Mass. 107, 134 N. E. 350; *Carpenter* v. *Life Ins. Co.*, 212 Mo. App. 336, 246 S. W. 623; *Life Ins. Co.* v. *Lucas* (Ky.) 79 S. W. 279, *Bradley* v. *Insurance Co.* (C. C. A.) 275 Fed. 657; *Snedeker* v. *Met. Life Ins. Co.*, 160 Ky. 119, 169 S. W. 570; *Whiting* v. *Insurance Co.*, 129 Mass. 240, 37 Am. Rep. 317; *Insurance Co.* v. *Hightower*, 148 Ga. 843, 98 S. E. 469; *Heiman* v. *Life Ins. Co.*, 17 Minn. (Gil. 127) 153, 10 Am. Rep. 154; *Insurance Co.* v. *Roessle*, 67 Mass. (1 Gray) 336; *Hoyt* v. *Life Ins. Co.*, 98 Mass. 539; *Quinby* v. *Life Ins. Co.*, 71 Hun. 104, 24 N. Y. Supp. 593; *Rossiter* v. *Life Ins. Co.*, 91 Wis. 121, 64 N. W. 876; *Hill's Adm'r* v. *Life Ins. Co.* (Ky.) 90 S. W. 544; 1 May on Insurance (4th Ed.) 56; 25 Cyc. 717-721.

Respondent contends that the contract of insurance was complete and relies on the following authorities: Joyce on Insurance, § 62; *Lombard* v. *Insurance Co.*, supra; *Hartford Fire Ins. Co.* v. *Whitman*, 75 Ohio St. 312, 79 N. E. 459, 9 Ann. Cas. 225; *Unterharnscheidt* v. *Insurance Co.*, 160 Iowa, 223, 138 N. W. 459, 45 L. R. A. (N. S.) 743; *Phœnix Assurance Co. of London* v. *McAuthor*, 116 Ala. 659, 22 South. 903, 67 Am. St. Rep. 154; *Insurance Co.* v. *Adler*, 71 Ala. 516; *Stephenson* v. *Allison*, 165 Ala. 238, 51 South. 622, 138 Am. St. Rep. 26; *Dibble* v. *Northern Ins. Co.*, 70 Mich. 1, 37 N. W. 704, 14 Am. St. Rep. 470; 16 Am. & Eng. Enc. of Law (2d Ed.) 855; *Cooper* v. *Mutual Life Ins. Co.*, 7 Nev. 116, 8 Am. Rep. 705; Joyce on Insurance, vol. 1, § 103; 14 R. C. L. 898; *Going* v. *Ins. Co.*, 58 S. C. 201, 36 S. E. 556.

Respondent's counsel cite other cases sustaining their contention that private instructions not contained in the application or policy are not binding upon the applicant or his beneficiary. This contention being conceded, it is not necessary to refer to the cases.

Bearing in mind the real question to be determined, a brief review of the cases relied on by respondent will demonstrate whether or not they answer appellant's contention.

In Joyce on Insurance, § 62, the author merely announces the accepted rule that—

"If the acceptance is made by the deposit of a policy in the mail, the contract is consummated, for the company thereby does an overt act which signifies that the policy should have present vitality."

This is the rule announced by this court in the Lombard Case. *Hartford Fire Ins. Co.* v. *Whitman*, does not appear to be in point, but the note and cases cited are instructive. On page 221, the annotator says:

"Whether a contract of insurance has been consummated may depend upon the presence or absence of any one of the several elements necessary to the complete formation of such a contract. When the contract lacks any one of the elements made essential to the particular contract in question by its own terms, it has not been consummated."

*Unterharnscheidt* v. *Insurance Co.*, is clearly within the principle of the Lombard Case. In *Phœnix Assurance Co.*

*of London* v. *McAuthor,* the question decided, material here, is stated in paragraph 4 of the syllabus:

"Where there is undisputed evidence of the completion of a contract of insurance, the burden of proving its cancellation, in an action thereon, is on the company, if it claims it."

In *Stephenson* v. *Allison,* the material question is stated in the opinion of the court (165 Ala. 238, 51 South. 622, 138 Am. St. Rep. on page 27) as follows:

"A contract of fire insurance is complete when it appears that the terms of the contract have been settled by the concurrent assent of the parties, and nothing remains to be done but to deliver the policy. The actual delivery is not essential to its completion."

This is also within the principle of the Lombard Case. *Dibble* v. *Northern Assurance Co.,* announces the rule that where an insurance agent has general authority from the owner to keep his property insured, cancels one policy on order of the company issuing it, and immediately reinsures in another company, paying the premium therefor, notifying the assured by mail of the transaction, and depositing the policy in his safe for the assured, is a sufficient cancellation of the first policy and delivery of the second to bind the latter company in case of loss. 16 Am. & Eng. Ency. of Law (2d Ed.) 855, is covered by the rule declared in the Lombard Case. *Cooper* v. *Pacific Mutual Life Ins. Co.,* is also determined by the doctrine announced in the Lombard Case. See, also, Joyce on Insurance, § 103, to the same effect. The text quoted from 14 R. C. L. 898, only cites *Cooper* v. *Mutual Life Ins. Co.,* which we have already considered.

*Going* v. *Insurance Co.,* is apparently the nearest analogy to the case at bar of any cited by respondent. The defense relied on by the company was the same as here. It was contended there was no completed contract of insurance as the policy had never been delivered. The local agent refused to accept payment of the premium which was seasonably tendered, giving as his reason that "the company would not allow him to deliver policies to sick men." The policy contained the following words: "This policy does not take effect until the first premium shall have been paid during the lifetime of the insured." Neither the policy nor the appli-

cation reserved the right in the company to withhold the policy on account of sickness, and, as already stated in this opinion, both reason and authority are against the proposition that an applicant for insurance can be bound by interpolating into the contract a stipulation to which he has not agreed. He is bound only by the terms of his contract.

The court in the Going Case having found that a tender of the premium had been made to the company during the lifetime of the deceased, and refusal of the company, under the terms of the contract in that case could not hold otherwise than that the contract of insurance was complete previous to the death of the insured, which occurred about three days after payment of the premium was tendered. This case is not out of harmony with the principle involved in cases heretofore reviewed. Like many others considered the rule in the Lombard Case applies.

In the instant case, however, we have another factor to consider—a factor not found in any of the cases called to our attention by either of the parties. It is not difficult to determine what the rights of the parties are where the contract provides that the policy shall not take effect until the first premium shall have been actually paid during the lifetime of the insured. In such case all that is necessary is to find that the insured, or someone in his behalf, made tender of payment, while the insured was yet alive. The law applied to that state of facts holds the insurance company liable. But where the contract provides, as in the instant case, that the company "shall incur no liability under this application until it has been received, approved and the policy issued and delivered and the full first premium stipulated in the policy has actually been paid to *and accepted by the company* during the lifetime of the life proposed," the question arises, did not the insurance company by that provision reserve the right to reject a tender of payment whether seasonably made or not. To hold, under such a provision, that the insurance company did not reserve the right to refuse to accept payment of the premium, would be in effect to entirely disregard the words we have italicized and give them no effect what-

ever.   This we have no right to do unless we can find that the words are meaningless or without significance.   It would be difficult to find that the words are without significance if we bear in mind the fundamental principles already referred to in relation to the effect of a tender of payment and refusal when the party making the tender is not in default.   In such cases, as we have seen, tender of payment is equivalent to payment as far as concerns the contractual rights of the party making the tender.   If an insurance company, for its own protection, desires to insert into the contract a clause or phrase by which it may avoid the effect of a mere tender being treated as equivalent to an actual payment, what principle of law or justice is thereby contravened?   Many insurance companies, as will appear from a review of the cases cited, protect themselves by a clause in the application or policy to the effect that the insurance is not effective unless the insured is in good health when the policy should be delivered.   As before stated, these provisions are always upheld by the courts.   Why then should not a stipulation of this kind be upheld, inasmuch as it is included in the application, and, in the absence of fraud, is conclusively presumed to have been within the knowledge of the applicant when he signed the application?

We are forced to the conclusion that the provision in the application referred to was inserted by defendant for its protection against contingencies arising subsequent to its approval of the application, and that the provision should be given effect according to its plain and obvious meaning.

From the foregoing discussion the conclusion is obvious that the trial court erred in denying defendant's motion for a directed verdict and in directing a verdict for the plaintiff.

Judgment reversed at respondent's cost.


WEBER, C. J., and GIDEON, FRICK, and CHERRY, JJ., concur.


On Application for Rehearing.

PER CURIAM.    Plaintiff has filed three separate briefs, and defendant has filed the same number in reply.

The decision of the court turned solely upon the following sentence in the contract for insurance:

"It is further agreed that the company shall incur no liability under this application until it has been received, approved and the policy issued and delivered and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the life proposed."

The defendant refused to accept the money when tendered, and likewise refused to deliver the policy. We held, that the defendant company reserved that right by the language above quoted. We find nothing in the briefs of counsel that justifies the court in changing its opinion or the decision heretofore rendered.

The application for rehearing is therefore denied.