## Katchmer et ux., Appellants, *v.* Prudential Insurance Company of America.

Argued December 4, 1936. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Harry D. Gottlieb,* of *Gottlieb & Dennis,* with him *J. Herman Kahn,* for appellants.

*Frederick J. Shoyer,* with him *Kendall H. Shoyer,* for appellee.

OPINION BY MR. JUSTICE STERN, January 11, 1937:

John Katchmer, son of plaintiffs, twenty-two years of age, signed a written application to defendant company for a policy of life insurance, and paid to its agent, on account of the first premium, the sum of one dollar, for which he obtained a receipt, the total premium being $14.05. The application provided that "unless the full first premium is paid by me at the time of making this application, the policy shall not take effect until issued by the Company and received by me and the full first premium thereon is paid, while my health, habits and occupation are the same as described in this application." Defendant prepared the policy and transmitted it to its agent Eugene J. Matis, who had solicited the application. What happened thereafter is the subject of dispute between the parties. Matis, on behalf of defendant, testified that he took the policy to John Katchmer, who said he did not have the money at that time to pay the premium, but would have it later; accordingly Matis departed without making delivery of the policy. About three weeks later John Katchmer died as the result of an accident. Plaintiffs, the beneficiaries named in the policy, gave an entirely different version. Anna Katchmer, the mother, testified that Matis came to plaintiffs' home with the policy, and showed it to her; she had $20 in her possession; "I was handing it [the money] to him

and he said he will return in a few days, for he wanted to sell more at the Heights. Q. More of the policies, you mean? A. More of the policies, and if he does he will get a bonus for the company. Q. Did you let him take the policy? A. Yes. Q. Then what happened. A. Then he says he will return in a few days, but he never did. Q. Did he say anything to you about the money? A. To keep it, he will come back in a few days. . . . Q. After the things you have already told us, did you say anything further? A. No, nothing. He says he will return in a few days and bring the policy, that I should have the money ready for him until he comes again, I should hold on to it. . . . Q. When he said to hold on to the money, or whatever it was he said, did you say anything? A. I said, 'All right,' and when he says he is going to sell more policies I says, 'O.K.' "

The jury rendered a verdict in favor of plaintiffs in the sum of $11,251.96, which covered the face amount of the insurance and the special benefit provided in case death occurred as the result of an accident. The court below entered judgment for defendant n. o. v., from which plaintiffs appeal.

The only controversy is as to whether the policy ever became operative. According to the application, a copy of which was attached to the policy and made a part of the contract, there were four conditions precedent to the policy becoming a legal obligation of defendant: (1) It had to be issued by the company; (2) it had to be received by the insured; (3) the full first premium had to be paid; (4) at the time of delivery of the policy the health, habits and occupation of the insured had to be the same as described in the application. Three of these conditions require no discussion in order to decide the case, because the policy was admittedly "issued" by the company; the full first premium was not actually paid, but it was, according to plaintiffs' version (which for present purposes must be taken as true), tendered to defendant, and tender of the premium, according to some

pertinent authorities, is equivalent to payment as far as this particular condition is concerned;* as to the requirement that the insured continue to be of the same health, habits and occupation, there was some controversy in regard to the fact, but the issue was not stressed at the trial and can be disregarded here.

The real question is as to compliance with the condition that the policy be "received" by the insured. Plaintiffs contend that actual delivery is unnecessary, that the test is merely whether the company, through its agent, intends by what it does or says to part with control of the policy and to place it within the dominance of the insured and thereby make the contract effective. We need not here decide, however, to what extent given circumstances of expression and action may supplant an actual manual tradition as the requirement for creating legal life in a contractual document. Measured even by the test suggested by plaintiffs, the present facts would not warrant a conclusion that the policy had been "received" by the insured or by the mother on his behalf. Even if we were to give to the word "received" an interpretation other than its plain and ordinary meaning, there is no evidence supporting a reasonable inference of an intention of the parties that delivery should be considered as having been made, thereby putting the policy into immediate effect. What Matis practically said to Mrs. Katchmer was that they should not go through with the transaction at that time but postpone it for a few days. He told her to "keep" the money, not, as plaintiffs contend, for *his* account, but without qualification. He did not intimate, much less say, that the policy should be deemed to be delivered and in operation; he "showed" it to Mrs. Katchmer, but took it away with him again, saying he would return in a few days. Noth-

---

* *Going v. Mutual Benefit Life Ins. Co.,* 58 S. C. 201, 36 S. E. 556; *White v. Metropolitan Life Ins. Co.,* 63 Utah 272, 224 Pac. 1106; *Travelers Insurance Co. v. Melman,* 147 Md. 459, 128 Atl. 125.

ing in the conversation between them can be tortured into a construction that they were to be reciprocal custodians of the policy and the money, or that any bailment or trust obligation as to either party was created. Furthermore, the policy expressly provided that the agent could not waive or modify any of its conditions or provisions. He had no authority, unless he actually accepted the tender of the premium, to deliver the policy: *Marland v. Royal Insurance Co.,* 71 Pa. 393. Moreover, to let Mrs. Katchmer "keep" the money was equivalent either to delivering the policy on credit, or to constituting her a bailee or trustee of the money; in either case this would have been the conferring of a favor or advantage prohibited by sections 635 and 636 of the Act of May 17, 1921, P. L. 789: *Harrisburg Trust Co. v. Mutual Life Insurance Co.,* 278 Pa. 255.

Upon facts practically identical with those in the present case it was held in *Spragg v. Prudential Ins. Co. of America,* 50 Ohio App. 451, 198 N. E. 585, that the policy did not become operative.

Judgment affirmed.